## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| IMOGENE COLE and GEORGIA BROWN, individually and on behalf of all others similarly situated,<br><br>     Plaintiffs,<br><br>  - against -<br><br>STEVEN J. BAUM and STEVEN J. BAUM, P.C.,<br><br>     Defendant. | Case No.: CV-11-3779 (SLT) (SMG)<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

### PRELIMINARY STATEMENT

1. On August 4, 2011, Plaintiffs Imogene Cole and Georgia Brown (collectively "Plaintiffs") brought this action on behalf of themselves and a class of similarly situated New York residents challenging the unfair and unconscionable debt collection and deceptive practices by defendant Steven J. Baum, P.C.

2. Because of newly discovered information not available at the time of the initial filing of this pleading, Plaintiffs now amend their complaint as a matter of right under Federal Rules of Civil Procedure Rule 15(a) to add Steven J. Baum in his individual capacity as a defendant in this action.  Additionally, Plaintiffs amend this complaint to add a cause of action under Section 1692f of the Fair Debt Collection Practices Act.

3. Defendant Steven J. Baum, as controlling shareholder of Steven J. Baum, P.C., is personally liable for the actions of Steven J. Baum, P.C. as he uses the privilege of doing business in the corporate form to perpetuate unfair and unconscionable debt collection and deceptive practices.

4.      Examples of recently discovered information demonstrating the use of the corporate form to perpetuate unfair and unconscionable debt collection and deceptive practices include:

(i)  Defendant Steven J. Baum, P.C.'s October 6, 2011 $2 million settlement with the Civil Frauds Unit of the United States Attorney's Office for the Southern District of New York where Defendant Steven J. Baum, P.C. agreed to change its internal practices in response to the United States Attorney's investigation of whether Defendant Steven J. Baum, P.C. "improperly initiated and pursue foreclosure proceedings…." *See* Settlement Agreement Between the United States of America, Steven J. Baum, P.C. and Pillar Processing, LLC, entered into Oct. 6, 2011, available at http://www.nylj.com/nylawyer/adgifs/decisions/100711baumsettlement.pdf; and

(ii)  An inquiry by the Committee on Oversight and Government Reform of the United States House of Representatives into Defendant Steven J. Baum, P.C.'s "culture of disdain for families suffering foreclosure and a disregard for the rule of law" after pictures from Defendant Steven J. Baum, P.C.'s 2010 office Halloween party, which revealed callous mocking of homeless and/or displaced victims' of Baum's foreclosure practices, were published in *The New York Times*. *See* Letter to Steven J. Baum from Elijah E. Cummings, Ranking Minority Member, Committee on Oversight and Government Reform, United States House of Representatives (Nov. 4, 2011), *at* http://democrats.oversight.house.gov/images/stories/20111104EEC_to_Baum.pdf.

5.      As a result, Plaintiffs Imogene Cole and Georgia Brown bring this action on behalf of themselves and a class of similarly situated New York residents challenging the unfair and unconscionable debt collection and deceptive practices under the Fair Debt Collection

2

Practices Act by defendants Steven J. Baum and Steven J. Baum, P.C. (hereinafter collectively referred to as "Baum" or "Defendant Baum" or "Defendant") in residential foreclosure actions by grossly neglecting or willfully failing to file the specialized Request for Judicial Intervention (known as an "RJI") required by the Uniform Rules for the New York State Trial Courts ("Uniform Rules") § 202.12-a(b), 22 New York Code of Rules and Regulations  § 202.12-a(b), which, in turn, deprives Plaintiffs and class members of their right to the statutorily mandated settlement conferences under New York Civil Practice Law and Rules ("CPLR") Rule 3408 in foreclosure actions (the "Class").

6.      Under New York law, plaintiffs, like banks, other lenders, and mortgage loan servicers who commence actions to foreclose on the homes of certain homeowners ("foreclosing plaintiffs") are required to follow specific procedural guidelines to ensure that the homeowner has ample opportunity to be apprised of alternatives to foreclosure, such as a loan modification. More specifically, counsel for foreclosing plaintiffs are required to file not only proof of service of process of foreclosure complaints, but also a specialized RJI ("RJI") that will prompt a CPLR 3408 settlement conference.

7.      The difference between merely filing proof of service and filing an RJI is momentous to the borrower.  By itself, filing proof of service of the summons and complaint in foreclosure actions starts the clock against borrowers for delinquent interest accruals and assessments of delinquency- and foreclosure-related fees, costs, and other charges.  Not until an RJI is filed, however, do the full protections of a settlement conference come into play.

8.      At this mandated settlement conference, the borrower will not only have the opportunity to negotiate loan modifications or other loss mitigation options (*e.g.*, short sale and deed-in-lieu-of-foreclosure) with court oversight, but will also obtain access to free housing

counseling, legal services, and other assistance as they seek to obtain a loan modification.  The New York Legislature and the New York court system have deemed these settlement conferences to be a crucial step in stemming the tide of home foreclosure, and experience has borne this out.  Where settlement conferences have occurred, foreclosures have decreased by up to 90 percent.

9.     Surprisingly, counsel for foreclosing plaintiffs, like Defendant Baum, have not been filing the RJIs that would trigger judicial oversight.  Defendant Baum is one of handful of law firms in New York State that handles bulk foreclosures for foreclosing plaintiffs.  Indeed, Defendant Baum represents foreclosing plaintiffs in approximately *40* percent of foreclosures in New York State.  Yet, evidence demonstrates that Defendant Baum has been wildly remiss in filing the now-required RJIs.  Defendant Baum has filed specialized RJIs only in approximately *seven* percent of cases in which it is required by law to file such RJIs.

10.     In order to implement the Legislature's directives contained in CPLR 3408, the New York State Unified Court System added a new Section 202.12-a to the Uniform Rules for the New York State Trial Courts ("Uniform Rules").  Section 202.12-a governs residential mortgage foreclosure actions and establishes mandatory court procedures for both the foreclosing plaintiff and the homeowner in the settlement conference part.

11.     Under Section 202.12-a(b)(1), foreclosing plaintiffs in all residential foreclosure actions must file a "specialized" RJI simultaneously with the filing of proof of service of the summons and complaint with the court clerk.  This "specialized" RJI identifies the case as a residential mortgage foreclosure and propels the foreclosure action into the settlement conference part.

12.     Additionally, once a specialized RJI is filed, the New York court provides the homeowner's name and contact information detailed in the RJI to local housing counseling agencies, which is an important opportunity for homeowners to receive meaningful and appropriate counseling prior to the settlement conference.  These housing counseling agencies typically prepare the homeowner for the settlement conference, referring the homeowner to free legal services agencies that offer foreclosure defense representation and assist with the complicated mortgage modification application process.

13.     Defendant Baum's failure to observe CPLR 3408 and Uniform Rule § 202.12-a(b) operates to rob Plaintiffs and Class members of the opportunity to resolve their mortgage loan delinquencies through CPLR 3408 settlement conferences and constitutes unfair and unconscionable collection practices in violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA").  Defendant Baum's conduct also violates New York General Business Law ("NYGBL") § 349.

14.     Defendant Baum's conduct constitutes an unfair debt collection practice under Federal law which has caused serious damage to Plaintiffs and the Class by prolonging the amount of time that Plaintiffs' and Class members' mortgage loans remain delinquent, which has caused their loan balances to swell due to unnecessary delinquent interest accruals and needless foreclosure- and delinquency-related fees being assessed against their loan accounts.

15.     Moreover, the undue swelling of homeowners' loan balances as a result of Defendant Baum's unlawful conduct decreases the likelihood that Plaintiffs and Class members can resolve the delinquency of their mortgage loans and retain their homes through loan modifications under the federal Make Home Affordable Modification Program ("HAMP") or the proprietary loan modification programs of individual loan servicing companies.

16.     Absent Defendant Baum's unlawful conduct, Plaintiffs and Class members would have been able to avail themselves of their rights to a settlement conference pursuant to CPLR 3408, and thus attempt to resolve the delinquencies on their mortgage loans more quickly, easily, and affordably.

17.     Alternatively, for those Plaintiffs or Class members who would not be able to resolve their mortgage loan delinquencies through the CPLR 3408 settlement conference process, Defendant Baum's unlawful conduct prolongs the foreclosure process and, consequently, the period of time homeowners' loans remains in delinquent status.

18.     As a result of the prolonged period of delinquency, the balances of these homeowners' loans have increased through unnecessary delinquent interest accruals and assessments of delinquency- and foreclosure-related fees, costs, and other charges that would not have been incurred absent the prolonged period of delinquency.

19.     Each Plaintiff would have lost far less equity in her home had Defendant Baum timely filed the Special RJIs in compliance with Uniform Rules § 202.12-a(b).

20.     Baum represents foreclosing plaintiffs in approximately 40 percent of foreclosures in New York State – and thus in thousands of actions in this District – and is willfully violating applicable rules of procedure specifically designed to protect homeowners. Robbed of those protections by Baum's unfair misuse of the court process, homeowners in foreclosure are suffering immediate and direct harm. As foreclosure actions languish in a limbo-like state, off any court's docket and undetected by the court system, the underlying loan balances grow unchecked.

21.     Plaintiffs and members of the Class seek to end Baum's unlawful activity immediately.

## JURISDICTION AND VENUE

22.     This Court has jurisdiction over Plaintiffs' federal claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1692k(d) and supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

23.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a significant number of the events or omissions giving rise to the claim occurred in this judicial district.  Defendant Baum regularly conducts business in this District because it files thousands of foreclosure actions in this District every year.

24.     In addition, and as described herein, this action is predicated upon Defendant's unfair debt collection practices which include, *inter alia*, intentional or negligent failure to timely prosecute actions which it has commenced in state court against members of the Class. Accordingly, the state law proceedings will not be delayed or impeded by prosecution of this action in Federal Court pursuant to the Federal FDCPA, nor will prosecution of this Federal action impede the timely adjudication of the state law actions.

25.     In addition, many if not most of the mortgages at issue in this action implicate the Federal regulations and guidelines under HAMP for loan modifications.

## PARTIES

*Plaintiffs*

26.     Plaintiff Imogene Cole resides in Queens County, New York.  Plaintiff Cole is a "consumer" as that term is defined in 15 U.S.C. § 1692a(3).

27.     Plaintiff Georgia Brown resides in Queens County, New York.  Plaintiff Brown is a "consumer" as that term is defined in 15 U.S.C. § 1692a(3).

*Defendants*

28.     Defendant Steven J. Baum is an individual residing in New York State who owns and controls the law firm of Defendant Steven J. Baum, P.C.  Steven J. Baum regularly collects debts alleged to be due another.  Upon information and belief, Steven J. Baum is the controlling shareholder of Steven J. Baum, P.C. and is involved in individual case-level decision-making at his law firm, Steven J. Baum, P.C. He is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(3).

29.     Defendant Steven J. Baum, P.C. is a New York professional corporation with its principal place of business at 220 Northpointe Parkway, Suite G, Amherst, New York 14228. Defendant holds itself out as a law firm and is regularly engaged in the business of collecting debts via New York State Supreme Court foreclosure lawsuits.  Defendant Baum's principal business is debt collection.  It regularly collects consumer debts alleged to be due to another.  It is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6).

30.     Defendant Baum is one of the largest foreclosure law firms in New York State.  It is estimated that Defendant Baum files 40 percent of all foreclosure actions in New York State. *See* Gretchen Morgenson, *New York Subpoenas Two Foreclosure-Related Firms*, N.Y. TIMES, April 9, 2011, at B1.

31.     Defendant Baum is attempting to collect a debt via a foreclosure action against Plaintiff Cole filed in Queens County Supreme Court on or around November 15, 2010.

32.     Defendant Baum is attempting to collect a debt via a foreclosure action against Plaintiff Brown filed in Queens County Supreme Court on or around January 3, 2011.

## FACTS

**A.    The Foreclosure Crisis in New York City**

33.    In 2007, New York City saw an explosion in the number of foreclosure filings. Between 2004 – the market peak for housing prices in the United States – and 2007, the beginning of the present recession, the number of residential foreclosures filings in New York City rose by 110 percent, from 6,860 to 14,458, respectively.  *See* Sarah Gereck, N.Y.U. FURMAN CTR. FOR REAL ESTATE & URBAN POL., THE RESIDENTIAL FORECLOSURE CRISIS: WHERE DO WE GO FROM HERE 4 (Mar. 29, 2011), http://furmancenter.org/files/Gerecke_ABCNY_032811.pdf ("Furman Report").

34.    But 2007 marked only the beginning of the City's foreclosure crisis.  Every year since, New York City has reported a record number of foreclosure filings:

      a.    2007:  6,860 filed foreclosure actions;

      b.    2008:  14,802 filed foreclosure actions (2.3 percent rise from 2007) ;

      c.    2009:  20,102 filed foreclosure actions (39 percent rise from 2007); and

      d.    2010:  16,911 filed foreclosure actions (17 percent rise from 2007)

*See* Furman Report at 4.

35.    Because of a larger stock of residential housing and the large number of subprime lenders targeting poor and minority neighborhoods in the mid-2000s, the outer boroughs of New York City have been particularly hard hit during this foreclosure crisis.

      a.    For the past few years, Kings and Queens Counties have consistently ranked in the top 10 for counties in New York State with the highest foreclosure rates, with foreclosure rates per 1,000 households of 7.4 and 10.8, respectively, in 2009.

      b.    In 2010, Kings and Queens Counties recorded foreclosure rates of 6.9 and

9

5.9, respectively.

c.     In terms of sheer foreclosure numbers, Kings and Queens Counties consistently rank in the top four hardest hit counties in New York State.  Kings County experienced 7,108 foreclosure filings in 2009 and 6,689 foreclosure filings in 2010; Queens County recorded 8,963 foreclosure filings in 2009 and 4,924 foreclosure filings in 2010.

*See* OFFICE OF THE STATE COMPTROLLER, REPORT 13-2011, *Foreclosures in New York City*, at 6 (March 2011)*,* http://www.osc.state.ny.us/osdc/rpt13-2011.pdf ("NYS Comptroller Report").

**B.     New York State's Court-Mandated Settlement Conference**

36.     In New York State, much of the burden of the foreclosure crisis has fallen on the court system.  Because New York is a "judicial foreclosure state," when a plaintiff seeks to foreclose, it must file a summons and complaint in the Supreme Court in the county where the property is located.

37.     In a foreclosure action in New York, the foreclosing entity is the plaintiff; the homeowner is the defendant.  Because most mortgages have been securitized in the past decade, however, the plaintiff is usually not the original lender.  Instead, the plaintiff may be the real estate investment trust that eventually bought the note and mortgage, or the servicer, a bank entity that "services" the mortgage on behalf of the real estate investment trust.  Even where the plaintiff is a real estate investment trust, the servicer, acting as the trust's agent, initiates the foreclosure action, works directly with the plaintiff's law firm, and communicates with the homeowner.  Most servicers are subsidiaries of major national banks.

38.     In the vast majority of foreclosure actions in New York, it is the servicer that acts as the foreclosing plaintiff, conducts foreclosures in the court system and negotiates mortgage

loan modifications with homeowners.  On the other hand, the entity that is the holder of the note and owns the mortgage often remains a virtual unknown to both the homeowner and the court system.

39.     In response to the foreclosure crisis, the New York State Legislature added Rule 3408 to the New York Civil Practice Law and Rules in 2008, amending it in 2009 to better protect homeowners from unnecessary foreclosure.

40.     CPLR 3408 mandates a court-supervised settlement conference in all residential foreclosure actions.  This settlement conference provides an opportunity for homeowners and foreclosing plaintiffs to negotiate loan modifications or other loss mitigation options (*e.g.*, short sale and deed-in-lieu-of-foreclosure) with court oversight.  Prior to the enactment of CPLR 3408, no early settlement conference in residential foreclosure actions had been required.  Instead, a foreclosure case would have quickly proceeded through the court system, albeit with higher homeowner default rates.

41.     Under CPLR 3408(a), the filing of proof of service of a residential foreclosure complaint triggers a requirement that the court hold a mandatory settlement conference within 60 days to "discuss[] ... the relative rights and obligations of the parties under the loan agreement." Specifically, the parties at the settlement conference must discuss "whether the parties can reach a mutually agreeable resolution to help the defendant avoid losing his or her home, and evaluating the potential for a resolution in which payment schedules or amounts may be modified or other workout options may be agreed to," as well as any purpose "the court deems appropriate."  CPLR 3408(a) states:

> In any residential foreclosure action involving a home loan as such term is defined in section thirteen hundred four of the real property actions and proceedings law, in which the defendant is a resident of the property subject to

11

foreclosure, *the court shall hold a mandatory conference within sixty days after the date when proof of service is filed with the county clerk*, or on such adjourned date as has been agreed to by the parties, *for the purpose of holding settlement discussions pertaining to the relative rights and obligations of the parties under the mortgage loan documents*, including, but not limited to determining whether the parties can reach a mutually agreeable resolution to help the defendant avoid losing his or her home, and evaluating the potential for a resolution in which payment schedules or amounts may be modified or other workout options may be agreed to, and for whatever other purposes the court deems appropriate.  (Emphasis added).

42.   Recognizing the unequal bargaining power between foreclosing plaintiffs and homeowners, the New York State Legislature established the settlement conferences so that the court could offer some protection to homeowners.  In that regard, CPLR 3408(d) requires that the foreclosing plaintiff file a "specialized" RJI (*see* Part C *infra* for more detail on the RJI). This specialized request must include the contact information of the homeowner.  The court is then required to send the homeowner's contact information to a local housing counseling agency. The housing counseling agency can then contact the homeowner in foreclosure and inform him or her of the free services, including legal services, available to assist him or her.  Connecting homeowners in foreclosure proceedings with housing counseling agencies and legal services organizations is crucial for good faith and fair dealing between foreclosing plaintiffs and homeowners as required under CPLR 3408(f).

43.   Under CPLR 3408(d), the filing of an RJI in a residential foreclosure action triggers a requirement that the court transmit the defendant's contact information to an agency that will help provide "housing counseling and foreclosure prevention services and options available" to a homeowner-defendant.  CPLR 3408(d) states:

> *Upon the filing of a request for judicial intervention in any action pursuant to this section, the court shall send either a copy of such request or the defendant's name, address and telephone number (if available) to a housing*

***counseling agency or agencies on a list designated by the division of housing and community renewal for the judicial district in which the defendant resides.*** Such information shall be used by the designated housing counseling agency or agencies exclusively for the purpose of making the homeowner aware of housing counseling and foreclosure prevention services and options available to them. (Emphasis added).

44.     CPLR 3408(e) requires the court to promptly notify the parties of the time and place of the settlement conference, its purpose and requirements, including the identity of documents that must be brought to the conference.  CPLR 3408(e) states:

> ***The court shall promptly send a notice to parties advising them of the time and place of the settlement conference, the purpose of the conference and the requirements of this section***.  The notice shall be in a form prescribed by the office of court administration, or, at the discretion of the office of court administration, the administrative judge of the judicial district in which the action is pending, and shall advise the parties of the documents that they should bring to the conference.  For the plaintiff, such documents should include, but are not limited to, the payment history, an itemization of the amounts needed to cure and pay off the loan, and the mortgage and note.  If the plaintiff is not the owner of the mortgage and note, the plaintiff shall provide the name, address and telephone number of the legal owner of the mortgage and note.  For the defendant, such documents should include, but are not limited to, proof of current income such as the two most recent pay stubs, most recent tax return and most recent property tax statements.  (Emphasis added).

45.     Under Uniform Rules § 202.12-a(f), counsel representing plaintiffs in residential mortgage foreclosure actions must " file an affidavit or affirmation confirming the scope of inquiry and the accuracy of papers filed."  Uniform Rules § 202.12-a(f) states:

> The Chief Administrator of the Courts may continue to ***require counsel to file affidavits or affirmations confirming the scope of inquiry and the accuracy of papers filed in residential mortgage foreclosure actions*** addressing both owner-occupied and (notwithstanding section (a) *supra*) non-owner-occupied residential properties.  (Emphasis added).

46.     CPLR 3408 and the required settlement conferences were deemed necessary because "…a majority of distressed homeowners do not attempt to contact their lender prior to

the commencement of foreclosure proceedings." The settlement conference "…bill provides that if an action is commenced, the homeowner will receive a second opportunity to reach resolution with the lender early in the foreclosure process…." 2007 Legis. Bill Hist. N.Y.S.B. 8143.

47.     New York amended CPLR 3408 to apply to all owner-occupied, one-to-four-family homes to impose the additional requirement that settlement conferences be conducted in good faith. By combining a mandatory settlement conference and a good faith requirement, the New York State Legislature sought to ensure that homeowners have ample opportunity to avoid foreclosure.

48.     In November 2010, the Office of Court Administration ("OCA") issued a report analyzing the success of the CPLR 3408 settlement conferences. According to OCA, the mandatory settlement conferences have led to a significant decrease in default rates; some estimates reflect a decrease of up to 90 percent. *See* Ann Pfau, STATE OF N.Y. UNIFIED COURT SYSTEM, 2010 REPORT OF THE CHIEF ADMINISTRATOR OF THE COURTS PURSUANT TO CHAPTER 507 OF THE LAWS OF 2009 8 (Nov. 29, 2010), http://www.nylj.com/nylawyer/adgifs/decisions/112910foreclosurereport.pdf *(hereinafter* "OCA Report").

**C.     The Specialized Request for Judicial Intervention in New York Foreclosure Actions**

49.     Unlike federal court, New York State Supreme Court does not automatically assign a judge to a case upon its commencement. Instead, a party in a New York State action must file an RJI for a judge to be assigned. The RJI can be filed at any time after service of process. Without an RJI, the case effectively does not move forward. Uniform Rules § 202.6; *see also* David D. Siegel, NEW YORK PRACTICE § 77B (5th ed. 2010).

50.     As discussed above, however, in order to equalize the playing field between the often unrepresented homeowner and the foreclosing plaintiff, the New York State Legislature added CPLR 3408 in 2008.  To implement the Legislature's directives contained in CPLR 3408, the New York State Unified Court System added a new provision, Uniform Rules Section 202.12-a.  Section 202.12-a governs residential mortgage foreclosure actions and establishes mandatory court procedures for both the foreclosing plaintiff and the homeowner in the settlement conference part.  *See* Uniform Rules § 202.12-a.

51.     Specifically, Section 202.12-a revised the RJI procedures in a foreclosure action to guarantee minimal delay between the filing of a foreclosure summons and complaint and the first settlement conference.  Section 202.12-a requires that plaintiffs in all residential foreclosure actions file a "specialized" RJI simultaneously with the filing of proof of service of the summons and complaint with the court clerk.  Uniform Rule § 202.12-a(b)(1).[1]

52.     It is this "specialized" RJI – which can only be filed by the foreclosing plaintiff and must be filed simultaneously with the filing of proof of service – that identifies the case as a residential mortgage foreclosure and propels the foreclosure action into the settlement conference part.  Additionally, once a specialized RJI is filed, the New York court provides the homeowner's name and contact information detailed in the RJI to local housing counseling

---

[1]     In March 2011, the Office of Court Administration revised its RJI system.  Effective September 1, 2011, instead of filing a single, separate "specialized RJI" for foreclosure actions, foreclosing plaintiffs will now be required to file a traditional RJI with a "foreclosure addendum" if the home being foreclosed upon is owner-occupied and one-to-four-family.  NYS Unified Court System, *Revised RJI (Request for Judicial Intervention) Form, at* http://www.courts.state.ny.us/forms/rji/index.shtml. The foreclosure RJI addendum will have the same impact as the "specialized" RJI contemplated in CPLR 3408 and Uniform Rules § 202.12-a; the homeowners' name and contact information is requested so that the court system can provide housing counseling agencies and, as conspicuously noted at the bottom of the addendum, the bank or servicer must file the RJI and foreclosure addendum simultaneously with the filing of proof of service of the summons and complaint.  *See* NYS Unified Court System, *Foreclosure RJI Addendum, at* http://www.courts.state.ny.us/forms/rji/UCS-840F-fillable.pdf.

agencies as an important means to provide an "opportunity for homeowners to receive meaningful and appropriate counseling prior to the [settlement] conference." Chief Administrative Judge Ann Pfau, *Assisting Homeowners Facing Foreclosure*, N.Y. LAW J., May 1, 2009, http://www.law.com/jsp/nylj/PubArticleNY.jsp?id=1202430331826; *see also* Uniform Rules § 202.12-a(b)(2).

53.     These housing counseling agencies typically prepare the homeowner for the settlement conference, referring the homeowner to free legal services agencies that offer foreclosure defense representation and assist with the complicated mortgage modification application process.

54.     Within 60 days after the foreclosing plaintiff's filing of the specialized RJI, the court schedules a settlement conference in the foreclosure action.  Uniform Rules § 202.12-a(b)(8).  Homeowners who are able to connect with a housing counseling agency can seek the assistance of a free legal services attorney at the settlement conference.  Since the adoption of CPLR 3408, an increased number of homeowners have been represented by counsel.  *OCA Report* at 11.

55.     Between January 1, 2010 and October 20, 2010, 30,571 settlement conferences were held in state courts in New York City alone.  According to the OCA Report, the settlement conference process has shown "real progress," with fewer defaulting homeowners and an increase in the number of settlements of foreclosure actions.  *OCA Report* at 12-13.  The OCA Report notes, however, that its statutory mandate of assisting and protecting homeowners could be better achieved if more homeowners were represented by counsel, thus highlighting the importance of making the identification requirement of homeowners in foreclosure to housing counseling agencies as required after the filing of the RJI.  *OCA Report* at 11-12.

**D.      New York Courts Seek to Prevent Fraud through Attorney Affirmations**

56.      Although New York, through the creation of the residential foreclosure settlement conference part, attempted to soften the impact of the foreclosure crisis by maximizing the opportunities to keep viable homeowners in their homes, the court system was ill-prepared for the next crisis that would be foisted upon it – the "robo-signing" debacle.

57.      Instead of verifying the allegations in a foreclosure complaint – such as the actual ownership of the note and mortgage and whether the homeowner was in fact delinquent – alleged employees and agents of foreclosing plaintiffs signed and notarized affidavits alleging these facts without ever checking the paperwork to confirm the facts.

58.      Disregarding the requirement that they actually review the underlying paperwork before proceeding to foreclosure, alleged employees and foreclosing plaintiffs signed hundreds of affidavits a day purporting to verify the accuracy of the allegations in the respective foreclosure complaints.  In the case of GMAC, 400 affidavits are submitted per day; in the case of Bank of America, 7,000 to 8,000 affidavaits are submitted per month.  Such volume makes it humanly impossible for these employees to meaningfully review the paperwork necessary to foreclose, earning them the moniker "robo-signers."

59.      Confronted with the fact that the New York courts were being used to perpetuate potentially fraudulent foreclosures, the New York Court System sought to fix what had become "a deeply flawed process."  Press Release, "New York State Unified Court System, New York Courts First in Country to Institute Filing Requirement to Preserve Integrity of Foreclosure Process" (Oct. 20, 2010), http://www.courts.state.ny.us/press/pr2010_12.shtml.

60.      On October 20, 2010, the New York State Court System issued Administrative Order #548-10, later modified by a March 2011 Administrative Order #431-11, requiring the

plaintiff's counsel in foreclosure actions to file an affirmation certifying that counsel has performed due diligence and taken reasonable steps – including inquiry to foreclosing plaintiffs and careful review of the papers filed in the case – to verify the accuracy of documents filed in support of residential foreclosures.  The latest effective date of the Order was November 18, 2010.[2]

61.     Under the new requirement, counsel to foreclosing plaintiffs must submit the "Due Diligence Affirmation" at one of several stages.  In new cases filed on or after November 18, 2010, the affirmation must accompany the "specialized" RJI, which must, in turn, be filed when the foreclosing plaintiff files the corresponding proof of service.  In cases pending on November 18, 2010, where no judgment of foreclosure had been entered as of November 18, 2010, the affirmation must be filed either with the proposed order of reference or with the proposed judgment of foreclosure.  In cases pending on November 18, 2010, in which a judgment of foreclosure had been entered but the property had not yet been sold as of November 18, 2010, the affirmation must be filed before the scheduled auction, with a copy to be served on the referee.

62.     Thus, because the Due Diligence Affirmation must be filed simultaneously with the "specialized" RJI, filing of the Due Diligence Affirmation has also become a prerequisite to reach the settlement conference part in a foreclosure action filed on or after November 18, 2010.

---

[2]      The New York State Unified Court System Office of Court Administration issued Administrative Order #548/10 on October 20, 2010, and the accompanying press release described the Order as "effective immediately."  Administrative Order #540/10 was replaced by Administrative Order # 431/11 issued on March 2, 2011, which was designated "effective November 18, 2010, *nunc pro tunc*."  See http://www.nycourts.gov/courts/10jd/suffolk/pdf/attorneyaffirmation.pdf

**E.**     **Bank Attorneys Subvert the Purpose of the Due Diligence Affirmation**

63.     Since the October 20, 2010 issuance of Administrative Order #548-10 by the New York State Court System, foreclosing plaintiffs have continued to file foreclosure summons and complaints in record numbers.  In most foreclosure cases, attorneys for foreclosing plaintiffs are filing proof of service soon after serving the summons and complaint on the homeowner.  Yet, the filing of specialized RJIs in foreclosure actions is at a standstill, presumably because New York State's foreclosure law firms are overwhelmingly reluctant to sign the Due Diligence Affirmation that must accompany the filing of the specialized RJI.

64.     Because a specialized RJI *must* be filed simultaneously with the filing of proof of service, foreclosure firms that file proof of service – but not the specialized RJI – violate Uniform Rules § 202.12-a(b)(1).   And the mounting evidence is that a vast majority of foreclosure firms are not complying with this mandate.

65.     Although the purpose of the Due Diligence Affirmation requirement is to protect homeowners from fraudulent filings, it has had little impact in practice.  In fact, attorneys for foreclosing plaintiffs have used the requirement an unfair debt collection practice to actually harm New York homeowners.

66.     For example, in the first month after the Due Diligence Affirmation was instituted, the number of foreclosure summons and complaints filed in Queens and Kings Counties slightly decreased, as the foreclosing plaintiffs' law firms evaluated the Due Diligence Affirmation requirement.  Andrew Keshner, *Foreclosures Plunge as Attorneys Adjust to New Affirmation Rule,* N.Y. Law J., Dec. 16, 2010.  In the a study conducted by MFY Legal Services, Inc. ("the MFY Study"), in November 2010, only 206 foreclosure summons and complaints were filed in Queens County, a 58 percent decrease from the 487 foreclosure summons and complaints

filed in March 2010.[3]  Similarly, in November 2010, only 187 foreclosure summons and complaints were filed in Kings County, a 50 percent decrease from the 377 foreclosure actions filed in March 2010.

67.    By March 2011, foreclosing plaintiffs' attorneys were filing foreclosure summons and complaints with proof of service at a markedly increased rate.  In March 2011, 295 foreclosure summons and complaints were filed in Queens County and 234 foreclosure summons and complaints were filed in Kings County for a total of 529 foreclosure actions.  In 523 of those 529 foreclosure actions, the foreclosing bank and servicer's attorneys filed proof of service soon after the summons and complaints were filed.

68.    While the filing of foreclosure summons and complaints and corresponding proof of service has kept pace with pre-Due Diligence Affirmation filings, what has come to a grinding halt is the number of RJIs filed in new foreclosure actions and, as a result, the number of homeowners who can avail themselves of the benefit of court-mandated settlement conferences.

69.    Since the Due Diligence Affirmation requirement was announceed on October 20, 2010, no RJI has been filed in the vast majority of foreclosure actions brought in Kings and Queens Counties.  Of the 393 foreclosure cases filed in November 2010 in Queens and Kings Counties, only 49 RJIs were filed – even though proof of service was filed in 387 of those cases. *See* MFY Study, at page 15.  Of these 393 actions, 19 have been discontinued, leaving approximately 82 percent of all foreclosures filed in Queens and Kings Counties in November

---

[3]    The MFY Study was conducted between May and June 2011.  Queens and Kings Counties were chosen as the counties to study since they are the hardest hit counties, by sheer numbers, in New York City. Because November 2010 was the first full month after the institution of the Due Diligence Affirmation, November 2010 was chosen as a month to review all foreclosure filings.  March 2011 was chosen to provide a more recent perspective, and because this study was begun in May 2011, not all the data for April 2011 foreclosure filings was available from the county clerks.

2010 in the limbo-like state between the filing of the complaint and the settlement conference. *Id.*

70.    In March 2011, 529 foreclosure summons and complaints were filed in Kings and Queens Counties.  *Id.*  Of these 529 actions, only 45 RJIs have been filed[4] – even though proof of service was filed in 523 cases.  *Id.*  Of these 529 actions, two have been discontinued, leaving 91 percent of all foreclosure filed in Kings and Queens Counties in March 2011 in a limbo state between the filing of the complaint and the settlement conference.  *Id.*

71.    As reflected in these numbers, upwards of 90 percent of all foreclosure filings in Queens and Kings Counties sit in limbo, waiting for the banks and servicers' law firms to file the specialized RJI they were required to file simultaneous with the filing of proof of service. Uniform Rules § 202.12-a(b)(1).

**F.    Homeowners Are Unaware of and Unable to File the Specialized RJI**

72.    Upon information and belief, for most homeowners, the foreclosure summons and complaint is often their first experience with the court system.  Most homeowners do not know what to do when served a summons and complaint, as evidenced by the low number of answers filed.   For foreclosure actions filed in November 2010 in Queens and Kings Counties, homeowners filed answers in only 26 percent of all actions.  The number of answers filed further decreased to only 18 percent in all foreclosure actions filed in Queens and Kings Counties in March 2011.

73.    Given the lack of legal sophistication of a typical homeowner in foreclosure, he is usually unaware that an RJI needs to be filed for his case to proceed.  Additionally, if a homeowner does learn that an RJI must be filed, not only will there be a $95 fee to file the RJI

---

[4]        March 2011 data is current through June 17, 2011.

himself or herself, there is no provision for the homeowner to file the "specialized" RJI that brings a foreclosure action into a settlement conference. Uniform Rules § 202.12-a(b)(1). Instead, a homeowner must file a traditional RJI.[5] But by filing a traditional RJI, the homeowner moves the case into the court's ***general*** trial docket for all civil litigations, bypassing the ***settlement conference*** part afforded by CPLR 3408.

### G. Homeowners Are Harmed by The Foreclosing Plaintiffs' Attorneys' Delay in Filing The Specialized RJIs

74.     The foreclosure firms' across-the-board practice of failing/refusing to file the specialized RJI has severe consequences for homeowners facing foreclosure. *First*, because the specialized RJI includes contact information for the homeowner which is provided directly to free housing counseling agencies, homeowners are effectively denied access free housing counseling, legal services, and other assistance as they seek to obtain a loan modification. This access to services was deemed to be of such importance that the New York State Legislature included it as part of CPLR 3408 when it required mandatory settlement conferences.

75.     *Second*, a homeowner's right to the settlement conference itself is thwarted. CPLR 3408 evinces the New York State Legislature's recognition that the inequities inherent when a large national bank, servicer, or other foreclosing plaintiff represented by counsel brings a foreclosure action against a homeowner in financial distress and therefore requires that *every* foreclosure action involving an owner-occupied, one-to-four family home, be subject to a mandatory settlement conference with court oversight.

---

[5]        Starting September 1, 2011, all foreclosure actions will require the filing of a traditional RJI ***and*** a foreclosure addendum.  *See supra* note 1.  We anticipate that homeowners will be unable to file the foreclosure addendum since the addendum itself clearly contemplates that it is the foreclosing plaintiffs' attorneys, not the homeowners, who will file the RJI with proof of service.

76.    *Finally*, without court oversight, a homeowner is left to try to negotiate a loan modification by himself or herself.  Although the federal HAMP regulations govern most loan modifications, most homeowners are unaware of their rights under HAMP and have little power to dispute foreclosing plaintiffs' interpretations of the rules.  Additionally, for loans that are owned by the Federal National Mortgage Association ("Fannie Mae") or owned by the Federal Home Loan Mortgage Corporation ("Freddie Mac"), other government-mandated rules apply to mortgage modification requests.  Because mortgages are generally securitized, most homeowners do not even know who owns their mortgage loan or holds their note.

77.    The complexities of the federal regulations and rules, the lack of sophistication of most homeowners vis-à-vis that of the foreclosing plaintiffs, and the lack of court oversight leave the vast majority of these homeowners vulnerable as their cases languish after the filing of the summons and complaint.

78.    The longer this "limbo" period lasts, the greater the economic harm inflicted upon homeowners in foreclosure.  As the MFY Study reflects, the current limbo period averages at least seven months.  Of the foreclosures filed in Queens and Kings Counties in November 2010, the first full month after the Due Diligence Affirmation was required, 82 percent of homeowners are still waiting for the foreclosing plaintiffs' attorneys to file the specialized RJI to move the case to the settlement conference part.

79.    Upon information and belief, after a foreclosing plaintiff has filed a foreclosure summons and complaints, it refuses to accept mortgage payments from the homeowner.  Every month, the homeowner is charged late fees and various foreclosures costs, including the cost of sending an employee to the home to ascertain whether the homeowner is still living in the house.

80.     Thus, the delay between filing of proof of service and filing of the specialized RJI causes damage to homeowners in the form of a prolonged period of delinquency which results in delinquent interest accruals, additional late fees, extra foreclosure costs, and increased principal balances.

81.     When a homeowner obtains a mortgage modification, these costs – known as "arrears" – are almost always capitalized into the new unpaid principal balance of the modified mortgage loan.   As the delay period between the filing of the case and the filing of the RJI increases, the chances that a homeowners will be able to modify his mortgage to provide for an affordable monthly mortgage payment decreases.   There comes a point at which the arrears become too large and cannot be capitalized into an affordable modification.

**H.     Defendant Baum Represents Foreclosing Plaintiffs in 40 Percent of All Foreclosure Filings in New York State**

82.     In each state, only a handful of law firms usually handle foreclosure matters in bulk for foreclosing plaintiffs.   In New York City, approximately four foreclosure law firms account for the vast majority of foreclosure actions.   *See* MFY Study, at page 6.

83.     Defendant Steven J. Baum, P.C. a suburban Buffalo law firm, is one of New York State's largest foreclosure law firms and accounts for 40 percent of all foreclosure filings in New York State courts.   *See* G. Morgenson, *New York Subpoenas Two Foreclosure-Related Firms*.   In 2009, Baum filed 9,808 foreclosure cases in the counties covered by the Eastern District of New York (Queens, Kings, Richmond, Nassau, and Suffolk).   Richard Wilner, *Liening on NY Homeowners – Chase and Law Firm Draw Scrutiny Over Tactics in Foreclosure Cases*, N.Y. Post, Feb. 28, 2010, at 36.

24

84.     In recent years, Baum's practices have been subjected repeatedly to pointed criticism by various New York State courts as well as United States bankruptcy courts. Moreover, in April 2011, the New York State Attorney General issued subpoenas to Baum and its default servicing firm Pillar Processing, LLC to obtain information related to their questionable foreclosure practices.  *See* G. Morgenson, *New York Subpoenas Two Foreclosure-Related Firms*.

85.     Though it has filed thousands of foreclosure cases in New York City, Baum has filed only a handful of specialized RJIs since the October 2010 requirement that such an RJI be accompanied by a Due Diligence Affirmation.  For example, of the 67 foreclosures Baum filed in November 2010 in Queens and Kings Counties, for which proof of service also was filed, Baum filed an RJI in only *six* percent of cases.  March 2011 saw a similar number: in the 92 foreclosure actions it commenced and in which it filed proof of service, Baum filed an RJI in only *seven* percent of cases.

## I.     Individual Plaintiff Facts

### a.     Imogene Cole

86.     Plaintiff Imogene Cole is 61 years old and lives in Queens County, New York with her 24-year-old daughter and her 29-year-old niece.  Ms. Cole has owned her home at 114-56 203 Street, St. Albans, New York for over 10 years, purchasing it in March 2001.

87.     Ms. Cole refinanced her mortgage in December 2004 with Lend America. Almost immediately, her mortgage was assigned to ABN-AMRO Mortgage Group, which was purchased by Citigroup in January 2007.  At that point, CitiMortgage, the servicing subsidary of Citigroup, began servicing Ms. Cole's mortgage.

88.     In April 2009, Ms. Cole, a bus driver employed by the NYC MTA, was involved in an on-the-job accident and was unable to continue working.  She applied for workers' compensation and social security disability insurance, both of which were eventually awarded to her.

89.     While waiting for her workers' compensation and social security to be awarded, Ms. Cole contacted CitiMortgage to inquire if her mortgage payments could be lowered. Although Ms. Cole was entitled to be considered for a HAMP modification, on or around December 2009, CitiMortgage placed Ms. Cole on a three-month, in-house modification trial plan that was entitled "Home Affordable Modification Trial Period Plan," which was not an official "Home Affordable Modification *Program* Trial Period Plan" under HAMP.  This CitiMortgage plan temporarily lowered her monthly mortgage payments.

90.     Ms. Cole made all payments under the trial plan.  When the three-month plan expired at the end of February 2010, Ms. Cole called CitiMortgage.  A representative instructed Ms. Cole that she could continue to make the lower payment even though the trial plan had officially expired.  The CitiMortgage representative did not explain to Ms. Cole that by making the decreased monthly payments once the trial plan had expired, she was officially "delinquent" on her mortgage and CitiMortgage could foreclose on her.

91.     On November 15, 2010, Defendant Baum filed a foreclosure action on behalf of CitiMortgage against Ms. Cole in Queens County Supreme Court.

92.     On or around November 19, 2010, Defendant Baum filed proof of service of the summons and complaint.

93.     As of November 17, 2011, Defendant Baum has yet to file the specialized RJI, in violation of Uniform Rules § 202.12-a(b)(1), in Ms. Cole's foreclosure action.

26

94.     Since receiving the summons and complaint, Ms. Cole has submitted numerous mortgage modification applications and supporting financial documents to CitiMortgage, continuously updating her application when requested.

95.     Although Ms. Cole has sufficient income to support a mortgage modification, Ms. Cole has yet to be offered a mortgage modification.

96.     Instead, during the twelve months since Defendant Baum filed proof of service without filing the specialized RJI, Ms. Cole has fallen victim to the very abusive practices that the New York State Legislature sought to prevent by creating the settlement conference requirement for all home mortgages.

97.     First, for example, instead of being considered for a HAMP modification, on or around January 27, 2011, CitiMortgage offered Ms. Cole a forbearance plan.  Defendant Baum contacted Ms. Cole directly regarding the proposed forbearance agreement.  If such an offer was proposed during the settlement conference without first considering Ms. Cole for a HAMP modification, the court would likely order CitiMortgage to consider a HAMP modification as a modification is preferable to a forbearance agreement since a forbearance agreement does little to cure the homeowner's delinquency, permits late fees to be charged, and only sets the homeowner further behind.

98.     Second, in or around December 2010, when Ms. Cole submitted an application for a mortgage modification, Defendant Baum called Ms. Cole, requesting that she provide it with a copy of the original note.  Possession of the note by plaintiff is a prerequisite to filing a foreclosure summons and complaint in New York State; accordingly, Baum's inquiry signals that it could not execute a Due Diligence Affirmation.  If Baum made such a request during the settlement conference, the court would be alerted that plaintiff's counsel likely filed the

foreclosure action in violation of state law.   Unfortunately, in Ms. Cole's case, a settlement conference has yet to be scheduled because Defendant Baum has not yet filed the specialized RJI – even though it filed proof of service in November 2010.

99.     Late fees, delinquent interest, and other foreclosure-related costs and fees continue to accrue on Ms. Cole's mortgage loan as a result of the delay caused by Defendant Baum's violation of Uniform Rules § 202.12-a(b).   Between the commencement of the foreclosure action on November 15, 2010 and August 1, 2011, Ms. Cole has been charged the following fees:

    a.     Late Fees: -- $160.16

    b.     Delinquent Interest: -- $11,094.71

    c.     Attorney Fees: -- $1,460.00

100.    Ms. Cole's experience reflects the harm incurred by homeowners when denied access to the settlement conference.   For the past eight months, CitiMortgage has re-requested the same financial documents multiple times and has offered Ms. Cole an in-house temporary modification agreement and a forbearance agreement – even though she is entitled to a HAMP mortgage modification.   Defendant Baum has requested documents from Ms. Cole that it should have had in its possession prior to filing the foreclosure action.   At a settlement conference, the court would not allow for such delay and abuse.

### b.     Georgia Brown

101.    Plaintiff Georgia Brown is 35 years old and lives in Queens County, New York. In June 2009, Ms. Brown purchased her first home at 134-53 175 Street, Jamaica, New York. With the purchase of her home, Ms. Brown took out a mortgage from MetLife Home Loans ("MetLife").

28

102.    Ms. Brown works two jobs and has sufficient income to support a mortgage loan modification.

103.    In or around May 2010, Ms. Brown began to fall behind on her mortgage because much of her income at that time was used to support her father's medical care after he suffered a stroke.

104.    On or around January 3, 2011, Defendant Baum filed a foreclosure summons and complaint on behalf of its client, MetLife, against Ms. Brown.

105.    On or around January 18, 2011, Defendant Baum filed proof of service of the summons and complaint.

106.    As of August 1, 2011, Defendant Baum had yet to file the specialized RJI in violation of Uniform Rules § 202.12-a(b)(1).

107.    After waiting more than nine (9) months, Defendant Baum filed the specialized RJI on or around September 21, 2011.  Ms. Brown's first settlement conference was held on November 7, 2011, more than eleven (11) months after she received the summons and complaint.

108.    During the past eleven (11) months, Ms. Brown has been in contact with MetLife, repeatedly submitting applications and supporting financial documents for a mortgage modification.  Ms. Brown has yet to receive a response from MetLife regarding her mortgage modification requests.  Instead, MetLife continues to ask her to resubmit updated paystubs and bank statements.  Ms. Brown last submitted updated paystubs on May 23, 2011.

109.    Because Ms. Brown entered into her mortgage with MetLife in June 2009, her mortgage falls outside of the date range for a HAMP modification.  However, Ms. Brown's mortgage is owned by Freddie Mac (and serviced by MetLife).  As a result, specific regulations

regarding Freddie Mac modifications are applicable to Ms. Brown's mortgage.  Without access to the protections of a settlement conference, Ms. Brown was unaware of what rights were available to her as a Freddie Mac mortgagor.

110.   Furthermore, on or around June 3, 2011, Ms. Brown received a letter from MetLife stating that it received her most recent submission.  MetLife again stated that it would need another 30 to 45 days to review her May 23, 2011 submission of updated paystubs.  As of July 13, 2011, Ms. Brown has yet to receive any other information from MetLife regarding her mortgage loan modification request.

111.   During the nine months between Defendant Baum's filing of the proof of service and the filing of the specialized RJI, a violation of Uniform Rules § 202.12-a(b)(1), Ms. Brown submitted multiple mortgage modification applications and supporting financial documents and was never provided a response to her requests for a modification.  Without access to the court-supervised settlement conference, Ms. Brown remained on the revolving wheel of document submissions to MetLife.

112.   Late fees, delinquent interest, and other foreclosure fees accrued to Ms. Brown's outstanding mortgage balance as a result of the delay caused by Defendant Baum's violation of Uniform Rules § 202.12-a(b).  Upon information and belief, between the commencement of the foreclosure action on January 3, 2011 and August 1, 2011, it is estimated that Ms. Brown has been charged the following fees:

  a.   Late Fees: -- $109.97

  b.   Delinquent Interest: -- $30,271.55

  c.   Attorney Fees: -- $1,460.00

113.   If a settlement conference was held soon after the filing of the proof of service and in accordance with Uniform Rules § 202.12-a(b)(1), the court would not allow such delay and abuse, while unnecessary fees accrued against Ms. Brown.

**J.   Class Allegations**

114.   Plaintiffs repeat and re-allege every allegation above as if set forth herein in full.

115.   This class action is brought by Plaintiffs on behalf of themselves and all New York State homeowners who have been served with a Summons and Complaint by Defendant Baum between November 18, 2010 and the present, and whose cases were not sent to the appropriate part of the New York Supreme Court for CPLR 3408 settlement conferences because Defendant Baum failed to file the specialized RJI simultaneous with the filing of proof of service with the county clerk in the respective county in which Defendant Baum commenced the underlying foreclosure lawsuit.   Plaintiffs sue on their own behalf and on behalf of a class of persons under Rule 23(a) and (b) of the Federal Rules of Civil Procedure.

116.   Plaintiffs do not know the exact size or identities of the proposed Class, because such information is in the exclusive control of Defendant.   Plaintiffs believe that the Class encompasses several thousand individuals whose identities can be readily ascertained from Defendant's books and records.   Therefore, the proposed Class is so numerous that joinder of all members is impracticable.

117.   All members of the Class have been subjected to and affected by the same conduct.   The claims are based on Defendant Baum's violation of Uniform Rules for the New York State Trial Courts, 22 NYCCRR § 202.12-a(b), by commencing foreclosure actions against Plaintiffs and Class members, filing proof of service, but failing to file the specialized RJI that triggers a foreclosure settlement conference.   There are questions of law and fact that are

31

common to the Class and that predominate over any questions affecting only individual members of the Class.  These questions include, but are not limited to, the following:

      a.      whether Defendant is required to file the specialized RJI upon filing proof of service of the summons and complaint with the county clerk in the county where Defendant commenced a foreclosure action;

      b.      whether Defendant failed to file the specialized RJI upon filing proof of service of the summons and complaint with the county clerk in the county where Defendant commenced a foreclosure action;

      c.      whether Defendant violated Uniform Rules § 202.12-a(b) by failing to file the specialized RJI at the time it filed proof of service of the summons and complaint with the county clerk in the county where Defendant commenced a foreclosure action;

      d.      whether Defendant's violation of Uniform Rules § 202.12-a(b) constitutes a violation of the FDCPA;

      e.      whether Defendant's violation of Uniform Rules § 202.12-a(b) constitutes a "deceptive practice" in violation of NYGBL § 349;

      f.      whether Defendant's violation of the FDCPA constitutes a violation of NYGBL § 349;

      g.      whether Defendant violated the FDCPA, notwithstanding whether Defendant violated Uniform Rules § 202-12a(b);

      h.      whether the above practices caused Class members to suffer injury; and

      i.      the proper measure of damages and injunctive relief.

118.    The claims of the named Plaintiffs are typical of the claims of the Class and do not conflict with the interests of any other member of the Class in that both Plaintiffs and the

other members of the Class were subject to the effects of the same unlawful conduct and are experiencing the same damages as a result of Defendant Baum's unlawful conduct, namely, the inability to expeditiously resolve their alleged mortgage loan delinquencies through statutorily mandated CPLR 3408 conferences.

119.   The named Plaintiffs will fairly and adequately represent the interests of the Class.  They are committed to the vigorous prosecution of the class claims and have retained attorneys who are qualified to pursue this litigation and have experience in class action litigation, consumer protection class action, foreclosure defense litigation, and CPLR 3408 conference representation.

120.   A class action is superior to other methods for the fast and efficient adjudication of this controversy.   A class action regarding the issues in this case does not create any manageability problems.

121.   This putative class action meets both the requirements of Fed. R. Civ. P. 23(b)(2) and Fed. R. Civ. P. 23(b)(3).

## COUNT I (AGAINST STEVEN J. BAUM AND STEVEN J. BAUM, P.C.)

## VIOLATION OF FAIR DEBT COLLECTION PRACTICES ACT

122.   Plaintiffs repeat and re-allege every allegation above as if set forth herein in full.

123.   The FDCPA prohibits a debt collector from using any false, deceptive, or misleading means in connection with the collection of any debt. 15 U.S.C. § 1692e.

124.   Defendant Baum violated 15 U.S.C. § 1692e when it unlawfully obstructed homeowners in foreclosure from resolving their mortgage delinquencies through the settlement conference process mandated by CPLR Rule 3408 when Defendant failed to file the specialized

RJI when it was required to do so, which failure is also an express violation of Uniform Rules § 202.12-a(b).

125.     Defendant Baum's unlawful conduct that violates Uniform Rules § 202.12-a(b) violates the FDCPA's prohibition against using false, deceptive, or misleading means in connection with the collection of any debt because:

a.      Defendant Baum's unlawful conduct obstructs borrowers in foreclosure from exercising their right to avail themselves of the statutorily mandated settlement conference process;

b.      Defendant Baum's unlawful conduct obstructs borrowers from working with their lenders, their loan servicing companies, and/or the foreclosing plaintiff directly to resolve alleged delinquencies on their mortgage loans because lenders, loan servicing companies, and/or foreclosing plaintiffs generally will not modify loans once the homeowner is in foreclosure unless required to do so by law;

c.      Defendant Baum's unlawful conduct obstructs homeowners and their attorneys from negotiating with the foreclosing plaintiffs' representatives during the settlement conference process; and

d.      Defendant Baum's unlawful conduct causes borrowers to incur increased loan balances because every day between the filing of the proof of service and the filing of the specialized RJI is an additional day of unnecessary delinquency, causing the accrual and assessment of unnecessary fees and expenses against the borrower's loan account, which would not occur absent Defendant Baum's unjustified and improper delay in filing the specialized RJI.

126.    As a result of the above violations of the FDCPA, Defendant Baum is liable to Plaintiff and the Class for the maximum amount of statutory damages provided under 15 U.S.C. § 1692k, attorney's fees, litigation expenses and costs, and such other and further relief as this Court deems just and proper.

## COUNT II (AGAINST STEVEN J. BAUM AND STEVEN J. BAUM, P.C.)

## VIOLATION OF FAIR DEBT COLLECTION PRACTICES ACT

127.    Plaintiffs repeat and re-allege every allegation above as if set forth herein in full.

128.    The FDCPA prohibits a debt collector from using unfair or unconscionable means to collect or attempt to collect a debt.  15 U.S.C. § 1692f.

129.    Defendant Baum violated 15 U.S.C. § 1692f by failing to file the specialized RJI when required to do so, which is also an express violation of Uniform Rules § 202.12-a(b).

130.    Defendant Baum's unlawful conduct in violation of Uniform Rules § 202.12-a(b) violates the prohibition against unfair or unconscionable debt collection practices in 15 U.S.C. § 1692f because:

  a.    Defendant Baum's unlawful conduct obstructs borrowers in foreclosure from exercising their right to avail themselves of the statutorily mandated settlement conference process;

  b.    Defendant Baum's unlawful conduct obstructs borrowers from working with their lenders, their loan servicing companies, and/or the foreclosing plaintiff directly to resolve alleged delinquencies on their mortgage loans because lenders, loan servicing companies, and/or foreclosing plaintiffs generally will not modify mortgage loans once the homeowner is in foreclosure unless required to do so by law;

c.       Defendant Baum's unlawful conduct obstructs homeowners and their attorneys from negotiating with the foreclosing plaintiffs' representatives during the settlement conference process; and

d.       Defendant Baum's unlawful conduct causes borrowers to incur increased loan balances because every day between the filing of proof of service and the filing of the specialized RJI is an additional day of unnecessary delinquency, causing the accrual of unnecessary fees and expenses to accrue and be assessed against the borrowers' loan account, which would not occur absent Defendant Baum's unjustified and improper delay in filing the specialized RJI.

131.    As a result of the above violations of the FDCPA, Defendant Baum is liable to Plaintiff and the Class for the maximum amount of statutory damages provided under 15 U.S.C. § 1692k, attorney's fees, litigation expenses and costs, and such other and further relief as this Court deems just and proper.

**COUNT III (AGAINST STEVEN J. BAUM AND STEVEN J. BAUM, P.C.)**

**VIOLATION OF NEW YORK GENERAL BUSINESS LAW § 349**

132.    Plaintiffs repeat and re-allege every allegation above as if set forth herein in full.

133.    Plaintiffs bring this claim on behalf of themselves and on behalf of each member of the Class described above.

134.    NYGBL § 349(a) prohibits "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state . . . ."

135.    Under NYGBL § 349(a), an individual "injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful acts or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions.".

36

136.    Defendant violated, and continues to violate NYGBL § 349 by failing to file a specialized RJI pursuant to Uniform Rules § 202-12a(b) in Supreme Court foreclosure actions contemporaneous with the filing of proof of service with the county clerk in the county where the property is located.

137.    Defendant Baum's violation of Uniform Rules § 202-12a(b) is a deceptive act and/or practice because, *inter alia*, it obstructs homeowners from resolving the alleged delinquency on their mortgage loans expeditiously by availing themselves of their statutory right to an in-person settlement conference pursuant CPLR Rule 3408.  Simultaneously, as Defendant Baum's conduct delays foreclosure actions, homeowners' loan balances swell because unnecessary late fees, delinquent interest, and foreclosure-related costs and fees are assessed against homeowners' accounts.  Such increased loan balances render it more difficult for homeowners to obtain loan workouts.

138.    Defendant's conduct has a broad impact on consumers at large.  In approximately 90 percent of all foreclosure actions filed in Kings and Queens Counties, a specialized RJI is not filed contemporaneously with the proof of service.  Defendant, which acts as counsel to foreclosing plaintiffs in approximately 40 percent of all foreclosures filed in New York State, has an even more dismal record in Kings and Queens Counties:  it files number specialized RJIs only in approximately seven percent of cases in which it is required by law to file such RJIs.

139.    Defendant Baum committed the above-described acts willfully and/or knowingly.

140.    Defendant Baum's wrongful and deceptive acts have caused injury and damage to Plaintiffs and the Class and, unless enjoined, will cause further irreparable injury.

141.    Defendant's violations include, but are not limited to:

       a.        failing to file a specialized RJI in each foreclosure case filed in New York State in which Defendant has filed a proof of service of a summons and complaint, in violation of Uniform Rules § 202-12a(b); and

       b.        violating the FDCPA.

142.    As a direct and proximate result of these violations of NYGBL § 349, Plaintiffs and members of the Class have suffered compensable harm and are entitled to preliminary and permanent injunctive relief, and to recover actual damages, costs and attorney's fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request the following relief:

       a.        Certify this case as a class action and appoint the named Plaintiffs to be Class representatives and their counsel to be Class counsel;

       b.        Enter judgment declaring the acts and practices of Defendant complained of herein to constitute a violation of the FDCPA;

       c.        Enter judgment declaring the acts and practices of Defendant complained of herein to constitute a violation of NYGBL § 349;

       d.        Grant a permanent or final injunction enjoining Defendant and its agents, employees, affiliates, and subsidiaries from continuing to harm Plaintiffs and the members of the Class by failing to file Special RJI after filing proof of service of the Summons and Complaint;

       e.        Enjoin Defendants and its agents, employees, affiliates, and subsidiaries to file Special Requests for Judicial Intervention in all foreclosure cases where it represents the Plaintiff and filed proof of service of the Summons and Complaint;

       f.        Award statutory damages pursuant to the FDCPA, 15 U.S.C. § 1692k;

g.      Award actual and/or minimum damages, whichever are greater, pursuant to NYGBL § 349(h);

h.      Award Plaintiffs the costs of this action, including the fees and costs of experts, together with reasonable attorney's fees pursuant to NYGBL § 349(h), the FDCPA, and Fed. R. Civ. P. 23(h); and

i.      Grant Plaintiffs and the Class such other and further relief as this Court finds equitable, just, necessary and proper.

## JURY TRIAL DEMANDED

Plaintiffs demand trial by jury on all issues so triable.

Dated:   November 18, 2011
         New York, New York                 Respectfully Submitted,

                                            MFY LEGAL SERVICES, INC.

                                            By: _____/s/ Elizabeth M. Lynch_____
                                                Elizabeth M. Lynch (EML 8000)
                                                Adam H. Cohen (AHC 5087),
                                                of counsel to Jeanette Zelhof, Esq.
                                                New York, New York 10007
                                                Tel:  212-417-3700
                                                Fax: 212-417-3891

                                            HARWOOD FEFFER LLP
                                            Robert I. Harwood (RH 3286)
                                            James G. Flynn (JF 5929)
                                            488 Madison Avenue, 8th Floor
                                            New York, New York 10022
                                            299 Broadway, 4th Floor
                                            Tel:  212-935-7400
                                            Fax:  212-753-3630