## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

IMOGENE COLE and GEORGIA BROWN,
individually and on behalf of
all others similarly situated,

                    Plaintiffs,

- against -

STEVEN J. BAUM and STEVEN J. BAUM, P.C.,

                    Defendant.

Case No.: CV-11-3779 (SLT) (SMG)

**MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

MFY LEGAL SERVICES, INC.
Elizabeth M. Lynch (EML 8000)
Adam H. Cohen (AHC 5087),
of counsel to Jeanette Zelhof, Esq.
New York, New York 10007
Tel:  212-417-3700
Fax: 212-417-3891

HARWOOD FEFFER LLP
Robert I. Harwood (RH 3286)
James G. Flynn (JF 5929)
488 Madison Avenue, 8th Floor
New York, New York 10022
299 Broadway, 4th Floor
Tel:  212-935-7400
Fax: 212-753-3630

## Table of Contents

**Page**

Table of Authorities ......................................................................................................... iii

PRELIMINARY STATEMENT ........................................................................................ 1

ARGUMENT ..................................................................................................................... 2

I.      STANDARD OF REVIEW ON A MOTION TO DISMISS ............................... 2

II.     NEW YORK STATES' FORECLOSURE PREVENTION LAWS
      ARE CLEAR AND UNAMBIGUOUS ................................................................. 3

      A.     In Any Action – Not Merely Foreclosure Actions – New York Counsel Are
           Required To Conduct Due Diligence Before Filing Suit ......................... 4

      B.     Defendants' Purported Confusion About When To File RJIs Is Disingenuous ...... 5

      C.     New York's Foreclosure Laws Are Not Unconstitutional ........................ 7

III.    THE COMPLAINT STATES A CLAIM UNDER THE FDCPA ....................... 8

      A.     A Debt Collector's Failure To Adhere To State Or Local Law
           In Collecting Debt Violates The FDCPA ............................................... 9

      B.     Defendants' Noncompliance With New York's
           Foreclosure Prevention Laws Violates The FDCPA .............................. 12

IV.    DEFENDANTS' CONDUCT VIOLATED NEW YORK GBL § 349 ............... 13

      A.     Defendants' Practice Was Consumer-Oriented ....................................... 13

      B.     Defendants' Conduct Was Materially Misleading To Homeowners ....... 15

      C.     The Defendants' Actions Caused Harm ................................................... 17

V.     THE *NOERR-PENNINGTON* DOCTRINE IS IRRELEVANT ...................... 18

VI.    THE COURT SHOULD NOT ABSTAIN ......................................................... 19

      A.     The *Pullman* Abstention Doctrine Is Inapplicable ................................ 20

      B.     The *Colorado River* Doctrine Is Irrelevant .......................................... 21

VII.    DEFENDANT STEVEN J. BAUM IS INDIVIDUALLY LIABLE.................................23

CONCLUSION.................................................................................................................................25

**Table Of Authorities**

**Cases**                                                                                                          **Page**

*Ashcroft v. Iqbal*,
    556 U.S. 662, 129 S. Ct. 1937 (2009) ...............................................................................2

*Balk v. Fererstein & Smith, LLP*,
    2011 WL 1560984 (W.D.N.Y. Feb. 18, 2011) ...............................................................10

*Basile v. Blatt, Hasenmiller, Leibsker & Moore, LLC*,
    632 F. Supp. 2d 842 (N.D. Ill. 2009) .............................................................................10

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544, 127 S. Ct. 1955 (2007) ..............................................................................2

*Bildstein v. MasterCard Int'l Inc.*,
    329 F. Supp. 2d 410 (S.D.N.Y. 2004) ...........................................................................17

*Calabrese v. CSC Holdings, Inc.*,
    2004 WL 3186787 (E.D.N.Y. July 19, 2004) ...............................................................18

*Central Mortgage Co. v. Acevedo*,
    34 Misc. 3d 213, 934 N.Y.S.2d 285 (S. Ct. Kings County 2011) ....................................8

*Colorado River Water Cons. Dist. v. United States*,
    424 U.S. 800 (1976) ..................................................................................19, 21, 22

*Corcoran v. Frank B. Hall & Co.,* ,
    149 A.D.2d 165, 545 N.Y.S.2d 278 (1st Dep't 1989) .......................................................17

*Corsello v. Verizon N.Y., Inc.*,
    77 A.D.3d 344, 908 N.Y.S.2d 57 (2d Dep't 2010) ...................................................14, 16

*DDR Constr. Serv., Inc. v. Siemens Ind., Inc.*,
    770 F. Supp. 2d 627 (S.D.N.Y 2011) ...........................................................................22

*DirecTV, Inc. v. Rowland*,
    04-CV-297S, 2005 U.S. Dist. LEXIS 2454 (W.D.N.Y. Jan. 22, 2005) ...........................14

*Dittmer v. County of Suffolk*,
    146 F.3d 113 (2d Cir. 1998) .........................................................................................21

*ECA & Local 234 IBEW Joint Pension Trust Fund v. JP Morgan Chase Co.*,
    553 F.3d 187 (2d Cir. 2009) ...........................................................................................2

iii

*F.D.I.C. v. Four Star Holding Co.*,
  178 F.3d 97 (2d Cir. 1999) ................................................................19

*Fedell v. Wierzbieniec*,
  127 Misc. 2d 124 (S. Ct. N.Y. County 1985) ........................................9

*Feinberg v. Federated Dep't Stores, Inc.*,
  15 Misc. 3d 299, 832 N.Y.S.2d 760 (S. Ct. N.Y. County 2007) .....................15

*Flax v. Lincoln Nat'l Life Ins. Co.*,
  54 A.D.3d 992, 864 N.Y.S.2d 559 (2d Dep't 2008).........................15

*Gaidon v. Guardian Life Ins. Co. of Am.*,
  96 N.Y.2d 201, 727 N.Y.S.2d 30 (2001) ........................................15

*Harrison v. NBD, Inc.*,
  968 F. Supp. 837 (E.D.N.Y. 1997),
  cert. denied, 414 U.S. 827, 94 S.Ct. 48 (1973) ................................9

*Hartman v. Great Seneca Fin. Corp.*,
  569 F.3d 606 (6th Cir. 2009) .........................................................18

*Hayrioglu v. Granite Capital Funding, LLC*,
  794 F. Supp. 2d 405 (E.D.N.Y. 2011) ...........................................15

*Heintz v. Jenkins*,
  514 U.S. 291, 115 S. Ct. 1489 (1995).............................................9

*ICOS Vision Sys. Corp. v. Scanner Technologies Corp.*,
  No. 05 Civ. 6322 (DC), 2006 WL 838990 (S.D.N.Y. Mar. 29, 2006) .............18

*In re Joint E. and S. Dist. Asbestos Litig.*,
  78 F.3d 764 (2d Cir. 1996).............................................................19

*Kamruddin v. Desmond*,
  293 A.D.2d 714, 741 N.Y.S.2d 559 (2d Dep't 2002)......................4-5

*Karlin v. IVF Am., Inc.*,
  93 N.Y.2d 282, 690 N.Y.S.2d 495 (1999) ......................................13

*Kirk v. Gobel*,
  622 F. Supp. 2d 1039 (E.D. Wash. 2009) .......................................10

iv

*Knighten v. Palisades Collections, LLC*,
    721 F. Supp. 2d 1261 (S.D. Fla. 2010) ............................................................10

*Kuhne v. Cohen & Slamowitz, LLP*,
    2008 WL 608607 (S.D.N.Y. Mar. 5, 2008) ....................................................11

*Lamb v. Javitch, Block & Rathbone, LLP*,
    2005 WL 4137786 (S.D. Ohio 2005)...............................................................10

*LaSalle Bank, N.A. v. Pace*,
    31 Misc. 3d 627,
    919 N.Y.S.2d 794 (S. Ct. Suffolk County 2011) ...........................................7, 8

*Lightman v. Flaum*,
    97 N.Y.2d 128 (2001) .........................................................................................9

*Lindbergh v. Transworld Sys., Inc.*,
    846 F. Supp. 175 (D. Conn. 1994) ...................................................................11

*Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*,
    431 F.3d 353 (9th Cir. 2005) ..............................................................................9

*McCollough v. Johnson, Rodenberg & Lauinger*,
    610 F. Supp. 2d 1247 (D. Mont. 2009) ............................................................10

*McRedmond v. Wilson*,
    533 F.2d 757 (2d Cir. 1976).............................................................................20

*Mortgage Electronic Registration Sys., Inc. v. Lopez*,
    34 Misc. 3d 1238(A) (S. Ct. Queens County 2012)...........................................8

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983) .............................................................................................21

*Nero v. Law Office of Sam Streeter, P.L.L.C.*,
    655 F. Supp. 2d 200 (E.D.N.Y. 2009) .............................................................11

*Ohlson v. Cadle Co.*,
    2006 WL 721505 (E.D.N.Y. Mar. 21, 2006).....................................................23

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*,
    85 N.Y.2d 20, 623 N.Y.S.2d 529 (1995) .......................................................3, 14

*People v. Nationwide Asset Serv., Inc.*,
    26 Misc. 3d 258, 888 N.Y.S.2d 850 (S. Ct. Erie County 2009) ..................14, 16

v

*Pharmaceutical Soc'y of the State of New York, Inc. v. Lefkowitz,*
    586 F.2d 953 (2d Cir. 1978)..................................................................................20

*Raghavendra v. N.L.R.B.,*
    2009 WL 5908013 (S.D.N.Y. 2009) ......................................................................9

*Riordan v. Nationwide Mut. Fire Ins. Co.,*
    977 F.2d 47 (2d Cir. 1992)............................................................................... 13-14

*Russell v. Equifax A.R.S.,*
    74 F.3d 30 (2d Cir. 1996).................................................................................... 2-3

*Samiento v. World Yacht Inc.,*
    10 N.Y.3d 70, 854 N.Y.S.2d 83 (2008) .............................................................17

*Sanz v. Fernandez,*
    633 F. Supp. 2d 1356 (S.D. Fla. 2009) ..............................................................10

*Securitron Magnalock Corp. v. Schnabolk, ,*
    65 F.3d 256 (2d Cir. 1995),
    cert. denied, 516 U.S. 1114, 116 S. Ct. 916 (1996) ..........................................14

*Sheehy v. New Century Mortgage Corp.,*
    690 F. Supp. 2d 51 (E.D.N.Y. 2010) .................................................................15

*Stutman v. Chemical Bank,*
    95 N.Y.2d 24, 709 N.Y.S.2d 892 (2000) .......................................13, 14, 15, 16

*Sykes v. Mel Harris & Assocs., LLC,*
    757 F. Supp. 2d 413 (S.D.N.Y. 2010)...............................................................19

*Taylor v. City of Chicago,*
    2005 WL 1692635 2 (N.D. Ill. July 5, 2006)......................................................9

*T.F.T.F. Capital Corp. v. Marcus Dairy, Inc.,*
    312 F.3d 90 (2d Cir. 2002)..................................................................................18

*Teng v. Metropolitan Retail Recovery Inc.,*
    851 F. Supp. 61 (E.D.N.Y. 1994) .......................................................................23

*U.S. Bank N.A. v. Solorin,*
    34 Misc. 3d 292,
    934 N.Y.S.2d 655 (S. Ct. Queens County 2011) ............................................4, 8

*United Fence & Guard Rail Corp. v. Cuomo*,
    878 F.2d 588 (2d Cir. 1989).................................................................19

*Wells Fargo Century, Inc. v. Hanakis*,
    2005 WL 1523788 (E.D.N.Y. June 28, 2005) ...........................................21, 22

*West v. Village of Morrisville*,
    728 F.2d 130 (2d Cir. 1994).................................................................19

*Williams v. Goldman & Steinberg, Inc.*,
    2006 WL 2053715 (E.D.N.Y. July 21, 2006) ............................................11

*Williams v. Lambert*,
    46 F.3d 1275 (2d Cir. 1995).................................................................19, 20

*Williams v. Professional Collection Servs., Inc.*,
    2004 WL 5462235 (E.D.N.Y  Dec. 7, 2004) ............................................23

*Woodford v. Cmty. Action Agency, Inc.*,
    239 F.3d 517 (2d Cir. 2001).................................................................21

Statutes & Regulations

Civil Practice Law & Rules

    CPLR 3408(a) ................................................................................3

Fair Debt Collection Practices Act

    15 U.S.C. § 1692(a) .........................................................................8

    15 U.S.C. § 1692(e) .........................................................................8

    15 U.S.C. § 1692a(6) .......................................................................8-9

    15 U.S.C. § 1692e ...........................................................................8, 9, 10

    15 U.S.C. § 1692f ...........................................................................8, 9, 10

Federal Rules of Civil Procedure

    Fed. R. Civ. P. 12(b)(6)....................................................................2

New York Administrative Order

548-10 ........................................................................................................4, 5, 8

New York General Business Law

GBL § 349.................................................................................................. passim

New York Uniform Rules  (22 N.Y.C.R.R.)

§ 202.1................................................................................................................5

§ 202.12-a(a)...........................................................................................6, 7, 8, 12

§ 202.12-a(b)(1).................................................................................4, 5, 7, 9, 12,
15, 17

§ 202.12-a(b)(2)..................................................................................................6

§ 202.12-a(c).......................................................................................................4

§ 202.12-a(c)(2), et seq. ......................................................................................6

§ 130-1.1-a(b) .....................................................................................................4

## PRELIMINARY STATEMENT

Plaintiffs Imogene Cole and Georgia Brown, on behalf of themselves and others similarly situated, submit this memorandum of law in opposition to the Motion to Dismiss brought by Defendants Steven J. Baum and Steven J. Baum, P.C. (collectively, "Defendants").  Plaintiffs filed this proposed class action lawsuit under the Fair Debt Collection Practices Act ("FDCPA") and New York's General Business Law ("GBL") to hold Defendants – a foreclosure law firm and its principal – accountable for their egregious violations of New York State's foreclosure prevention laws that caused irreparable economic injury to homeowners.  As "debt collectors" under the FDCPA, Defendants' unlawful conduct deprived Plaintiffs of the relief intended by CLPR 3408 – a legitimate opportunity for residential homeowners to modify their mortgages and arrears and thus to avoid ever-mounting fees, including legal fees that, unsurprisingly, were ultimately paid to Defendants.

Defendants' only explanation for their conduct is that they believe New York law is "unclear" and "unworkable."  On the contrary, New York's foreclosure prevention laws and regulations are clear, unambiguous, and fair.  (*See* Point II, *infra.*)  Defendants' flagrant violation of these laws is a false, deceptive, misleading, unfair, and unconscionable debt collection practice that violates the FDCPA (*see* Point III, *infra*) and GBL § 349.  (*See* Point IV, *infra.*)

Defendants' remaining arguments – that their debt-collecting conduct is somehow protected as a First Amendment right under the *Noerr-Pennington* doctrine and that this Court should abstain – are meritless.  (*See* Points V and VI, *infra.*)  Finally, individual Defendant Steven J. Baum must be held accountable for his active role in the persistent and far-reaching violations of his eponymous law firm.  (*See* Point VII, *infra.*)

## ARGUMENT

### I.   STANDARD OF REVIEW ON A MOTION TO DISMISS

To withstand a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must provide "'enough facts to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 697, 129 S. Ct. 1937, 1960 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007) (plaintiffs must plead enough facts "[to] nudge[] their claims across the line from conceivable to plausible"). While the "plausibility" standard requires more than "a sheer possibility that a defendant has acted unlawfully," it is "not akin to a 'probability requirement.'" *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949. Rather, a facially plausible claim "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Moreover, in deciding whether a claim has been "plausibly" stated, *Twombly* and *Iqbal* do not alter the well established rule that the court must accept all facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor. *See, e.g., ECA & Local 234 IBEW Joint Pension Trust Fund v. JP Morgan Chase Co.*, 553 F.3d 187, 196 (2d Cir. 2009).

Here, Defendants argue that Plaintiffs' claims are not plausible because Plaintiffs fail to explain *why* Defendants engaged in their violative conduct. Under the applicable pleading standards, however, a plaintiff must merely plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 679. The pleading requirements do not necessitate explaining *why* defendants undertook certain actions.

Furthermore, intent is not an element of either claim here. Intent is not an element of a claim under the FDCPA. *See, e.g.*, *Russell v. Equifax A.R.S.*, 74 F.3d 30, 33 (2d Cir. 1996) ("Because the [FDCPA] imposes strict liability, a consumer need not show intentional conduct

2

by the debt collector to be entitled to damages."). Nor is intent an element of a claim under GBL § 349. *See Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 26, 623 N.Y.S.2d 529, 533 (1995) ("[I]t is not necessary under the statute [GBL § 349] that a plaintiff establish the defendant's intent to defraud or mislead . . . ."). The First Amended Class Action Complaint (the "Complaint" or "Compl.") fully meets federal pleading requirements.

## II.  NEW YORK STATES' FORECLOSURE PREVENTION LAWS ARE CLEAR AND UNAMBIGUOUS

The core of Defendants' motion is their contention that no claim can be predicated on New York State's foreclosure prevention laws and rules because they are ambiguous and conflicting, and pose an insuperable obstacle to compliance. This error must be addressed at the outset. Examination of the laws and rules governing New York State's foreclosure process reveals that they are clear and unambiguous, and Defendants, once responsible for the filing of 40 percent of all foreclosure actions in New York State, cannot now feign ignorance of or confusion about the basic laws and rules governing residential mortgage foreclosure.[1]

*(i)    The Statute:* Under CPLR 3408(a), the court must schedule the first settlement conference within 60 days of the foreclosing plaintiff's filing of proof of service of the summons and complaint.

---

[1]    On November 21, 2011, Defendant Steven J. Baum, P.C. filed a Worker Adjustment and Retraining Notification ("WARN") notice stating that it would lay off all of its employees by February 20, 2012. *See* Press Release, Steven J. Baum, P.C., Steven J. Baum, P.C. Files WARN Notice (Nov. 21, 2011) (*See* Exhibit A annexed hereto). Upon information and belief, Defendant Steven J. Baum, P.C. is no longer handling or filing foreclosure cases in New York State. Upon information and belief, under an Assurance of Discontinuance with the New York State Attorney General, Defendant Steven J. Baum is no longer permitted to represent lenders or services in any new residential mortgage foreclosure actions for a period of two years. *In the Matter of the Investigation by Eric T. Schneiderman, Attorney General of New York, of Steven J. Baum P.C., Pillar Processing, LLC, Steven J. Baum, and Brian Kumiega*, Assurance No. 12-002 (Feb. 16, 2012) ("OAG Assurance of Discontinuance") (*see* Exhibit B annexed hereto).

*(ii)    The Regulations:* Under Uniform Rule ("UR") § 202.12-a(b)(1), 22 N.Y.C.R.R., a foreclosing plaintiff must file, simultaneously with filing the proof of service, a specialized Request for Judicial Intervention ("RJI").  Under UR § 202.12-a(c), the court must then schedule a settlement conference within 60 days.

*(iii)   The Administrative Order:* Under Administrative Order ("A.O.") 548-10, counsel for foreclosing plaintiffs must file an affirmation certifying that counsel has performed due diligence and taken reasonable steps – including inquiry to their clients and careful review of the papers filed in the case – to verify the accuracy of documents filed in support of residential foreclosures at the time they file an RJI.

### A.    In Any Action – Not Merely Foreclosure Actions – New York Counsel Are Required To Conduct Due Diligence Before Filing Suit

Counsel for foreclosing plaintiffs need not, as Defendants now assert, "abdicate their gatekeeping function" or "commit perjury" in order to comply with UR § 202.12-a(b).  (Def. Br. at 7).  Rather, Defendants need only conduct the basic due diligence that *any* attorney must do before commencing *any* lawsuit in the New York State courts.  *U.S. Bank N.A. v. Solorin,* 34 Misc. 3d 292, 294, 934 N.Y.S.2d 655, 656 (S. Ct. Queens County 2011) (affirmation requirement in foreclosure actions "merely requires that attorneys certify that they have met a minimum standard of diligence").  Attorneys are required to guarantee that frivolous lawsuits are not initiated; that facts that cannot be supported are not alleged; and that fraud is not perpetrated on the court.  UR § 130-1.1.-a(b) ("By signing a paper, an attorney or party certifies that, to the best of that person's knowledge, information and belief, formed after an inquiry reasonable under the circumstances, . . . the presentation of the paper or the contentions therein are not frivolous . . . .").  *See also Kamruddin v. Desmond,* 293 A.D.2d 714, 715-16, 741 N.Y.S.2d 559,

4

561-62 (2d Dep't 2002) (plaintiffs' attorney in medical malpractice action would have been subject to sanctions had he failed to review medical records before filing suit).

Pursuant to A.O. 548-10, due diligence means that counsel for foreclosing plaintiffs must, before initiating a foreclosure action, ensure the allegations made in the foreclosure summons and complaint are accurate by (i) speaking to their clients and (ii) reviewing the defendant-homeowner's account information and loan documents.

In support of the supposed ambiguity of these rules, Defendants cite to UR § 202.1, a catch-all provision that permits the court to waive compliance "for good cause." *Id.* Defendants do not even assert, however, that there exists such "good cause" here or that they either requested or obtained such a waiver.[2]

### B.   Defendants' Purported Confusion About When To File RJIs Is Disingenuous

Defendants also attempt to muddy the waters by asserting that the rules do not clearly state what triggers the specialized RJI filing requirement of UR § 202.12-a(b)(1) when a case involves service of process on multiple defendants.   This argument is specious for numerous reasons:

*First*, UR § 202.12-a as a whole concerns the settlement conference process between the homeowner-defendant and the plaintiff-foreclosing mortgagee.   Other parties who are ordinarily named as co-defendants in a foreclosure action – including tenants in the home, second mortgage

---

[2]      With their motion, Defendants attach a September 7, 2011 letter from the NYS Bar Association Real Property Law Section to the Chief Administrative Judge that allegedly supports Defendants' self-serving allegations of confusion.  Defendant Steven J. Baum himself is listed on the letter as an "at large" member, raising questions as to the legitimacy of the letter writers' actual confusion.  The letter does not request a waiver under UR § 202.1.  In any event, this material raises a question of fact outside the purview of a motion to dismiss.

companies, or other lien holders – are not mentioned anywhere in the text of UR § 202.12-a(a)-(f).

*Second*, UR § 202.12-a(b)(2) specifies proof of service on the "homeowner" when it refers to the filing of proof of service on the "defendant":

> Upon the filing of the RJI, the court shall send either a copy of the RJI, or *the defendant's* name, address and telephone number (if available), to a housing counseling agency or agencies on a list designated by the Division of Housing and Community Renewal for the judicial district in which the defendant resides, for the purpose of that agency making *the homeowner* aware of housing counseling and foreclosure prevention services . . . .  22 N.Y.C.R.R. § 202.12-a(b)(2) (emphasis added).

*Third*, UR § 202.12-a refers to the "defendant" in the singular.  Other non-appearing co-defendants have no right to attend the settlement conference because they did not sign either the note or the mortgage.

*Fourth*, the stated purpose of UR § 202.12-a(c)(2) is, in part, to "help the defendant avoid losing his or her home . . . ."  The unmistakable inference is that the defendant referred to in UR § 202.12-a(b) is the homeowner subject to the foreclosure action.

*Fifth*, UR § 202.12-a(c)(5)(ii) states that the "defendant" should bring current income documentation, a list of monthly expenses, recent mortgage statements, income tax returns, property tax statements, and loan resolution proposals to the conference.  No other co-defendant in a foreclosure action would have all of these documents.

*Sixth*, UR § 202.12-a(a) limits applicability of the rule to mortgage foreclosures where the "defendant is a resident" of the property subject to the foreclosure action.

*Seventh*, assuming *arguendo* that the filing of the specialized RJI is tied not to the filing of the proof of service on the homeowner, but simply the last defendant served, the specialized RJI must nevertheless be filed, and service on multiple defendants is almost always effected

6

within days or weeks of each other.  Furthermore, Defendants do not claim that they complied even with their own self-serving "interpretation" of the rule.[3]

### C.   New York's Foreclosure Laws Are Not Unconstitutional

Finally, Defendants argue that UR § 202.12-a(b) is unconstitutional on the basis of a single case, *LaSalle Bank, N.A. v. Pace,* 31 Misc. 3d 627, 919 N.Y.S.2d 794 (S. Ct. Suffolk County 2011).  Defendants' argument, however, conflates separate sections of UR § 202.12-a adopted over different years.  Subsection (b) – the subsection at issue in this lawsuit – was adopted in 2008 as part and parcel of the initial promulgation of UR § 202.12-a and requires that the foreclosing plaintiff file an RJI at the time it files proof of service.  This rule and the procedure it sets forth was not even *mentioned* in *LaSalle*, nor has subsection (b) ever been declared unconstitutional. *LaSalle*, in contrast, addressed the 2010 adoption of subsection (f)[4] of UR § 202.12-a. That subsection is not in contention here.  Plaintiffs premise neither the FDCPA nor the GBL claims on Defendants' failure to comply with the due diligence affirmation requirement found unconstitutional in *LaSalle*.

---

[3]      Defendants cite to the "Foreclosure Addendum" to the RJI form as a further source of confusion. The Foreclosure Addendum went into effect on September 1, 2011, *after* UR § 202.12-a(b) was promulgated, and contains no language requiring the foreclosing plaintiff to wait until it files proofs of service on all defendants (most of whom are non-appearing) before filing the RJI form. *See* Foreclosure Request for Judicial Intervention Addendum UCS-840F, 3/2011, *available at* http://www.nycourts.gov/forms/rji/UCS-840F-fillable.pdf (the "Addendum").

     The Addendum merely states that: "Proof of service must be filed with this RJI for each defendant *upon whom a summons and complaint* or summons with notice *has been served." Id.* (emphasis added).  The language at the bottom of the Foreclosure Addendum merely requires Defendants to file all the proofs of service on defendants that have *already been served* when the RJI form is filed. *Id.* It does not require foreclosing plaintiffs to wait until all defendants, who ordinarily make no appearance in the action, are served.  UR § 202.12-a(b) is clear and does not conflict with any other rules or the single sentence at the bottom of the new Foreclosure Addendum.

[4]      Subsection(f), adopted on December 17, 2010, is related to A.O. 548-10 issued by the New York State Chief Administrative Judge in October 2010.

Specifically, *LaSalle* held that the Chief Administrative Judge exceeded her authority in issuing A.O. 548-10 and, by extension, adoption of subsection (f) of UR § 202.12-a. The decision represents a single state court trial judge's view of New York State's foreclosure prevention laws. *LaSalle* is on appeal and has subsequently been roundly ignored and tacitly rejected by other New York State trial courts. *See, e.g., Mortgage Electronic Registration Systems, Inc. v. Lopez*, 34 Misc. 3d 1238(A) (S. Ct. Queens County 2012) (requiring counsel to file a due diligence affirmation); *U.S. Bank N.A. v. Solorin*, *supra* (faulting plaintiff's counsel for failure to comply with AO 548-10); *Central Mortgage Co. v. Acevedo*, 34 Misc. 3d 213, 934 N.Y.S.2d 285 (S. Ct. Kings County 2011) (requiring foreclosing plaintiff's counsel to comply with UR § 202.12-a(f)).

## III.    THE COMPLAINT STATES A CLAIM UNDER THE FDCPA

In passing the FDCPA, Congress found "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices . . . ." 15 U.S.C. § 1692(a). The express purpose of the FDCPA was "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). The FDCPA prohibits "debt collector[s]" from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. The FDCPA also prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. A "debt collector" is defined as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due

8

another." 15 U.S.C. § 1692a(6).  Attorneys engaged in the collection of debt are debt collectors

subject to liability under the FDCPA.  *Heintz v. Jenkins,* 514 U.S. 291, 299, 115 S. Ct. 1489,

1493 (1995).  The FDCPA is a remedial statute that should be construed liberally.  *Harrison v.*

*NBD, Inc.,* 968 F. Supp. 837, 844 (E.D.N.Y. 1997) (*citing N.C. Freed Co. v. Bd. of Governors,*

473 F.2d 1210, 1214 (2d Cir.)), *cert. denied,* 414 U.S. 827, 94 S.Ct. 48 (1973)).

**A.      A Debt Collector's Failure To Adhere To State Or Local Law**
**In Collecting Debt Violates The FDCPA**

As a threshold issue, Defendants argue that violation of UR § 202.12-a(b) cannot serve as

the factual predicate of an FDCPA or GBL § 349 violation because neither federal procedural

nor state procedural law give rise to substantive rights and, thus, may not give rise to a separate

cause of action.   Defendants' argument is misplaced.   The authorities Defendants rely on

involved proposed causes of action for violation of the *procedural laws themselves*.[5]  In contrast,

the claims here are for conduct and practices that violate two *statutes* – federal (FDCPA §§

1692e and 1692f) and state (GBL § 349).  As the Complaint makes clear, because violations of

UR § 202.12-a(b) are deceptive, misleading, unfair, and unconscionable means of collecting

debt, they also violate the statutes.[6]

---

[5]      The plaintiffs in *Taylor v. City of Chicago,* 2005 WL 1692635, at *2 (N.D. Ill. July 5, 2006);
*Raghavendra v. N.L.R.B.,* 2009 WL 5908013, at *22 (S.D.N.Y. 2009), and *Living Designs, Inc. v. E.I.*
*Dupont de Nemours & Co.,* 431 F.3d 353, 372 (9th Cir. 2005), cited by Defendants, asserted causes of
action directly under the Federal Rules of Civil Procedure or professional conduct rules or attempted to
use a violation of the Federal Rules of Civil Procedure as the basis for a negligence claim.  The plaintiffs
in *Lightman v. Flaum,* 97 N.Y.2d 128 (2001), and *Fedell v. Wierzbieniec,* 127 Misc. 2d 124 (S. Ct. N.Y.
County 1985), cited by Defendants, asserted causes of action directly under New York *evidence* law.

[6]      The NYS Attorney General found that Defendants had violated UR § 202.12-a(b) in the majority
of the cases they filed and that this practice violates GBL § 349, lending great credence to Plaintiffs'
assertions that Defendants' violations of § 202.12-a(b) constitute "unfair and unconscionable" and "false,
deceptive and misleading means" of collecting debt and, as a result, are actionable under §§ 1692(e) and
1692(f) of the FDCPA.  *See* OAG Assurance of Discontinuance.

Federal courts have held that violations of state law by attorneys in debt collection lawsuits violate §§ 1692e and 1692f of the FDCPA. *See, e.g., Sanz v. Fernandez,* 633 F. Supp. 2d 1356, 1363 (S.D. Fla. 2009) (allegations that defendants, non-attorneys who filed eviction complaint seeking attorney's fees as agent for landlord, violated FDCPA § 1692e where state law prohibited such fees to non-lawyers); *Kirk v. Gobel,* 622 F. Supp. 2d 1039, 1047 (E.D. Wash. 2009) (collection attorney's claim for attorney's fees unfair and misleading under FDCPA §§ 1692e and 1692f in seeking and receiving default judgment in state court that included attorney's fees prohibited under Washington State law); *Balk v. Fererstein & Smith, LLP,* 2011 WL 1560984 (W.D.N.Y. Feb. 18, 2011) (violation of FDCPA where collection law firm, aware that mechanic's lien was invalid, nevertheless failed to discontinue foreclosure action); *Lamb v. Javitch, Block & Rathbone, LLP,* 2005 WL 4137786, at *3 (S.D. Ohio 2005) (failure to follow Ohio law requiring collection firm to set oral hearing on motion to confirm a debt collection arbitration award violates FDCPA). In short, violation of state law supports a federal claim when the state law violation constitutes a false, deceptive, misleading, unfair, and unconscionable debt collection practice under the FDCPA.[7]

---

[7]     In the context of collecting debts from consumers through state court lawsuits, a debt collector's failure to adhere to a jurisdiction's statute of limitations, ordinarily a procedural rule, is also actionable under the FDCPA. *See Knighten v. Palisades Collections, LLC,* 721 F. Supp. 2d 1261, 1271 (S.D. Fla. 2010) (granting summary judgment on FDCPA claims alleging unfair and deceptive practices in favor of consumer against collection attorneys for filing and litigating time-barred state court collection suit); *Basile v. Blatt, Hasenmiller, Leibsker & Moore, LLC,* 632 F. Supp. 2d 842, 845 (N.D. Ill. 2009) (time-barred suits are actionable under FDCPA); *McCollough v. Johnson, Rodenberg & Lauinger,* 610 F. Supp. 2d 1247, 1256-57 (D. Mont. 2009) (finding that law firm's service of requests for admissions upon *pro se* debtor in collection action brought outside the statute of limitations constitutes unfair and unconscionable conduct in violation of FDCPA).

Plaintiffs' claims are analogous to the plaintiffs' claims in *Knighten, Basile* and *McCollough,* where the FDCPA violations recognized by the court were predicated upon the defendant debt collector's commencement of a legal action to collect debt that was time-barred. New York's statutes of limitation are contained in New York's "procedural" law known as the Civil Practice Law and Rules.

In citing to the "licensing" cases, Defendants seek to expand on a narrow line of cases and to equate their own calculated refusal to file RJIs, which directly economically injures homeowners, with an unlicensed debt collector's mere mailing of collection letters.  In *Nero v. Law Office of Sam Streeter, P.L.L.C.*, 655 F. Supp. 2d 200 (E.D.N.Y. 2009), cited by Defendants, the court found that, in the Second Circuit, there was no "categorical holding" that a debt collector's mere "technical failure" to comply with a city licensing statute, by itself, violated the FDCPA.[8] *Id.* at 209.  As a result, courts must evaluate the claim on a case-by-case basis.  *Id.* In *Nero,* the court held that because the defendant, an unlicensed debt collector, had yet to file litigation, the mailing of a debt collection letter to the plaintiff did not violate the FDCPA merely on the basis that the debt collector was unlicensed in violation of local law. The other cases cited by Defendants, all regarding unlicensed debt collectors and debt collection letters, reach similar results.[9]

Here, Defendants' alleged conduct is hardly a "technical violation" of a licensing law. Instead, Plaintiffs' claim – that by failing to file the RJI, Defendants violated state law designed specifically to limit the economic damage to homeowners – goes to the heart of the FDCPA: to protect consumers from abusive and injurious practices.  It is also a claim of first impression in this Circuit.  Contrary to Defendants' statements otherwise, the fact that Defendants violated a provision of state law meant to protect the rights of consumers that is found in New York's

---

[8]     Under New York City law, debt collectors must be licensed and include their licensing number on all correspondence.  New York Admin Cod. Tit. 20, ch. 2 § 20-490.

[9]     *See Lindbergh v. Transworld Sys., Inc.,* 846 F. Supp. 175, 180-81 (D. Conn. 1994); *Kuhne v. Cohen & Slamowitz, LLP,* 2008 WL 608607, at *5-6 (S.D.N.Y. Mar. 5, 2008). *But cf. Williams v. Goldman & Steinberg, Inc.,* 2006 WL 2053715, at *1 (E.D.N.Y. July 21, 2006) (holding that an unlicensed debt collector violates the FDCPA by mailing a debt collection letter).

procedural law does not relieve Defendants of FDCPA liability.  Plaintiffs state a claim under the

FDCPA, and Defendants' motion to dismiss the FDCPA claims must be denied.

**B.    Defendants' Noncompliance With New York's**
**Foreclosure Prevention Laws Violates The FDCPA**

Defendants argue that the Complaint fails to state a claim under the FDCPA because New

York's foreclosure prevention laws are confusing and require Defendants to "commit perjury" in

order to comply with them, and furthermore, that the rules in question are "unconstitutional and,

thus, unenforceable."  (Def. Br. at 13-14.)  Defendants' interpretation of UR § 202.12-a(b) is

inaccurate. New York's foreclosure prevention laws are extremely clear.  As explained earlier

(*see* Point II, *supra*), the text of UR § 202.12-a(b) is clear on its face, and even clearer when read

in the context of UR § 202.12-a as a whole.   UR § 202.12-a(b) was designed to protect

homeowners from losing their homes to foreclosure unnecessarily and Defendants' violation of

this rule causes homeowners substantial economic injury in the form of higher loan balances and

decreased ability to modify their loans.  There can be no question that counsel for a foreclosing

plaintiff must file the specialized RJI when proof of service on the defendant-*homeowner* is filed

with the county clerk.  It should be noted that Defendants do not argue that they filed the RJI

form at the time they filed the final proof of service with the county clerk, which is when

Defendants allegedly believe that the RJI needs to be filed under their absurd interpretation of

UR § 202.12-a(b).  Instead, Defendants argue they do not need to comply with even their own

interpretation of UR § 202.12-a(b) because they believe that the rule is part of a series of

"conflicting procedures" and "unworkable guidelines."  As also previously discussed, the rules

do not require Defendants to commit perjury, but merely require them to perform due diligence

as officers of the court.  When examined carefully, Defendants' arguments regarding New York's foreclosure prevention laws fall flat and should be disregarded by the Court.[10]

## IV.  DEFENDANTS' CONDUCT VIOLATED NEW YORK GBL § 349

New York's GBL § 349(a) provides that "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful."  A claim under GBL § 349 requires proof of three elements: "first, that the challenged act or practice was consumer-oriented; second, that it was misleading in a material way; and third, that the plaintiff suffered injury as a result of the deceptive act."  *Stutman v. Chemical Bank*, 95 N.Y.2d 24, 29, 709 N.Y.S.2d 892, 895 (2000) (citations omitted).

### A.  Defendants' Practice Was Consumer-Oriented

As a threshold issue, Defendants claim that the Complaint fails to allege that they engaged in any consumer-oriented act.  Not so.  The Complaint alleges that: Plaintiffs are "consumers," Compl. ¶¶ 26, 27; Defendants, as "debt collector[s]," "regularly collect[] debts" or are "engaged in the business of collecting debts," Compl. ¶¶ 28, 29; and Defendants' conduct, affecting 40 percent of tens of thousands of homeowners in foreclosure in New York, has "a broad impact on consumers at large."  Compl. ¶ 138.

Defendants next assert that their debt collection practices fall outside GBL § 349 because they involve "litigation."  New York courts, however, have unambiguously held that GBL § 349 applies to "virtually all economic activity."  *Karlin v. IVF Am., Inc.*, 93 N.Y.2d 282, 290, 690 N.Y.S.2d 495, 498 (1999).  The protections of GBL § 349 are intentionally broad: "[t]he reach of

---

[10]    Tellingly, in the Assurance of Discontinuance, entered into after the NYS Attorney General's recent investigation of Defendants' violations of New York State foreclosure prevention laws, the Attorney General made no mention of the laws and rules in question being confusing or unworkable. OAG Assurance of Discontinuance.

these statutes 'provide[s] needed authority to cope with the numerous, ever-changing types of false and deceptive business practices which plague consumers in our State.'" *Karlin*, 93 N.Y.2d at 291, 690 N.Y.S.2d at 498 (*quoting* N.Y. Dep't of Law, Mem. to Governor, 1963 N.Y. Legis. Ann. at 105). As the Second Circuit has held, "[b]y its own terms . . . GBL § 349 applies to the acts or practices of *every* business operating in New York." *Riordan v. Nationwide Mut. Fire Ins. Co.*, 977 F.2d 47, 52 (2d Cir. 1992) (emphasis added).

Debt collection unequivocally falls within GBL § 349's ambit. *Stutman*, 94 N.Y.2d at 28, 709 N.Y.S.2d at 895 (misstatements about mortgage prepayment charges, if proved, could state claim under GBL § 349); *Oswego Laborers'*, 85 N.Y.2d at 21, 623 N.Y.S.2d at 533 (transactions involving commercial banks). *See also People v. Nationwide Asset Serv., Inc.*, 26 Misc. 3d 258, 888 N.Y.S.2d 850 (S. Ct. Erie County 2009) ("debt settlement" firm's overwhelming failure to deliver promised results violated GBL § 349). It is difficult to image "debt collection" without the prospect of "litigation." Indeed, litigation is incidental to the primary practice of debt collection.[11]

Finally, Defendants claim that their activity was not "consumer-oriented" activity, as required under GBL § 349. As the New York Court of Appeals has held, "[t]he critical question . . . is whether the matter affects the public interest in New York, not whether the suit is brought by a consumer or a competitor." *Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256, 264

---

[11]    Defendants erroneously rely on *DirecTV, Inc. v. Rowland*, 04-CV-297S, 2005 U.S. Dist. LEXIS 2454 (W.D.N.Y. Jan. 22, 2005), for the blanket proposition that "litigation is not a 'business transaction' involving the consumer." (Def. Br. at 18). Yet, the defendant in *DirecTV* did *not*, unlike defendants here, direct their activities at consumers. 2005 U.S. Dist. LEXIS at *7 ("there is no allegation that DirecTV's conduct is directed at consumers"). Further, unlike *DirecTV*, the very business of Defendants is debt collection and it was its very "course of conducting business." *Id.* at *8 (*Compare:* "DirecTV's litigation letters were *not* sent in the course of conducting business.") (emphasis added).

(2d Cir. 1995), *cert. denied*, 516 U.S. 1114, 116 S. Ct. 916 (1996).  *See also Corsello v. Verizon N.Y., Inc.*, 77 A.D.3d 344, 365-67, 908 N.Y.S.2d 57, 76 (2d Dep't 2010).

The claims alleged by Plaintiffs against Defendants, who are not parties to the contracts between Plaintiffs and their lenders (or lenders' assignees), do not concern private contract disputes or the underlying loans themselves.  Instead, this case concerns Defendants' routine and systematic violations of New York's foreclosure prevention laws in thousands of foreclosure actions commenced by Defendants.  Because Defendants represented foreclosing plaintiffs in nearly 40 percent of residential foreclosures in New York State, but only filed RJIs in seven percent of required cases in Kings and Queens Counties *alone*, Defendants' unlawful debt collection practices clearly has a broad impact on the public at large and, as a result, is "consumer-oriented conduct."  Compl. ¶¶ 20, 138.[12]

**B.**     **Defendants' Conduct Was Materially Misleading To Homeowners**

The second element for a claim under GBL § 349 is a materially misleading practice.  Whether a representation or an omission, the deceptive practice must be likely to mislead a reasonable consumer acting reasonably under the circumstances.  *Oswego Laborers'*, 85 N.Y.2d at 26, 623 N.Y.S.2d at 533.  A deceptive practice need not reach the level of common-law fraud to be actionable under GBL § 349.  *Stutman*, 95 N.Y.2d at 29, 709 N.Y.S.2d at 896.  In fact, the

---

[12]     The authorities cited by Defendants relate to individual, private disputes that did not involve the public at large.  *See, e.g., Hayrioglu v. Granite Capital Funding, LLC*, 794 F. Supp. 2d 405, 410 (E.D.N.Y. 2011) (plaintiffs used private broker in order to contact defendant); *Sheehy v. New Century Mortgage Corp.*, 690 F. Supp. 2d 51, 63 (E.D.N.Y. 2010) (real estate transaction involved family friend); *Flax v. Lincoln Nat'l Life Ins. Co.*, 54 A.D.3d 992, 995, 864 N.Y.S.2d 559, 561 (2d Dep't 2008) ("marketing practices are unique to Dr. Flax, and do not have an impact on the public at large."); *Feinberg v. Federated Dep't Stores, Inc.*, 15 Misc. 3d 299, 304, 832 N.Y.S.2d 760, 765 (S. Ct. N.Y. County 2007) ("This action is clearly atypical of the majority of cases brought under General Business Law § 349, as it is brought not by a purchaser against a seller, but by a manufacturer/wholesaler of consumer goods against the retail purchaser of its goods who ultimately sells such goods to the public.").

New York Court of Appeals has held that GBL § 349 "encompasses a far greater range of claims that were never legally cognizable before its enactment." *Gaidon v. Guardian Life Ins. Co. of Am.*, 96 N.Y.2d 201, 209, 727 N.Y.S.2d 30, 34 (2001).

Defendants' violation of UR § 202.12-a(b) is a deceptive act and/or practice for numerous reasons:

- It obstructs homeowners from resolving the alleged delinquency on their mortgage loans expeditiously by availing themselves of their statutory right to an in-person settlement conference pursuant CPLR 3408. Compl. ¶ 137.

- It delays foreclosure actions, increasing homeowners' loan balances because unnecessary late fees, delinquent interest, and foreclosure-related costs and fees are assessed against homeowners' accounts. *Id.*

- In turn, the increased loan balances render it more difficult for homeowners to obtain loan workouts. *Id.*

Defendants claim that their conduct was not misleading because they made no "statements" to the Class. Yet the filing of a foreclosure action is an affirmative statement that the action is being prosecuted in accordance with state law, despite the fact that Defendants routinely failed to file the required RJI. If, for the sake of argument, Defendants' conduct is considered an omission, it makes no difference: omissions are actionable under GBL § 349. *Corsello*, 77 A.D.3d at 365-66, 908 N.Y.S.2d at 75 ("The allegedly deceptive acts, whether misrepresentations *or omissions*, are governed by an objective standard: whether they were likely to mislead a reasonable consumer acting reasonably under the circumstances.") (emphasis added). *See also Nationwide Asset Serv.*, 26 Misc. 3d at 270-71, 888 N.Y.S.2d at 861 ("Either verbal expressions *or omissions* may serve as the basis for such claims.") (citation omitted; emphasis added). Moreover, "reliance is not an element of a section 349 claim . . . ." *Stutman*, 95 N.Y.2d at 29, 709 N.Y.S.2d at 896.

16

### C.    The Defendants' Actions Caused Harm

The third and final element of a claim under GBL § 349 is actual injury.  Although "actual" injury must be proven in order to recover under the statute, it need not be "pecuniary harm." *Stutman*, 95 N.Y.2d at 28-32 (citations omitted).  Defendants argue that the harm alleged is "pure speculation" because mere notification of or participation in a court-ordered settlement conference may not have actually resulted in a concrete benefit to members of the Class.

The Complaint alleges otherwise: Defendants' practice of filing foreclosure actions, but withholding filing of the specialized RJIs, resulted in actual pecuniary harm to the named Plaintiffs and potential class members.  Defendants' repeated violations of UR § 202.12-a(b) cause homeowners substantial pecuniary harm because the additional interest arrears, fees, and other charges that accrue as a result of the delay cause the principal balance of the homeowner's loan to swell.  The swelling of the principal balance resulting from each day that Defendants continue to violate UR § 202.12-a(b) decreases the likelihood that homeowners can modify their loan.  Defendants' repeated and continuing violation of UR § 202.12-a(b) also increases the amount the homeowner owes at the end of the action.  As a result, the amount of surplus the homeowner receives after a foreclosure auction is reduced or, in the case of properties in which the homeowner owes more on the loan than the home is worth (also known as "underwater properties"), the size of the potential deficiency judgment increases. Moreover, placing an insolvent into a situation of greater dimunition of assets and income – frequently known as "deepening insolvency" – is a recognized injury in New York and other jurisdictions. *Corcoran v. Frank B. Hall & Co.*, 149 A.D.2d 165, 175-76, 545 N.Y.S.2d 278, 283-84 (1st Dep't 1989).

Therefore, the injury to plaintiffs and the Class is directly related to Defendants' wrongful conduct.[13]

## V. THE *NOERR-PENNINGTON* DOCTRINE IS IRRELEVANT

Defendants argue that the instant suit is barred by the *Noerr-Pennington* doctrine because it supposedly interferes with Defendants' First Amendment right to file and prosecute foreclosure actions in state court. This is simply not the case. Under the *Noerr-Pennington* doctrine, those who petition the government for redress are generally immune from statutory liability for their petitioning conduct, including "attempts to petition the government through litigation in the courts." *ICOS Vision Sys. Corp. v. Scanner Technologies Corp.*, No. 05 Civ. 6322 (DC), 2006 WL 838990, at *4 (S.D.N.Y. Mar. 29, 2006). *See also T.F.T.F. Capital Corp. v. Marcus Dairy, Inc.*, 312 F.3d 90, 93 (2d Cir. 2002).

Courts reject the applicability of *Noerr-Pennington* to FDCPA claims. *See*, *e.g.*, *Hartman v. Great Seneca Fin. Corp.*, 569 F.3d 606, 615-16 (6th Cir. 2009) (First Amendment does not shield lawyers engaged in litigation from FDCPA liability) (*citing Sayyed v. Wolpoff & Abramson*, 485 F.3d 226, 232 (4th Cir. 2007)) ("'All circuits to consider the issue, except for the Eleventh, have recognized the general principle that the *FDCPA applies to the litigation activities of attorneys who qualify as debt collectors* under the statutory definition.")) (emphasis added).

---

[13]    The authorities relied on by Defendants are inapposite. *See*, *e.g.*, *Bildstein v. MasterCard Int'l Inc.*, 329 F. Supp. 2d 410, 414 (S.D.N.Y. 2004) (materiality not even alleged: "Because Bildstein's Amended Complaint contains no allegation regarding materiality, it is insufficient to state a claim under Section 349."); and *Samiento v. World Yacht Inc.*, 10 N.Y.3d 70, 854 N.Y.S.2d 83 (2008) (plaintiffs failed to show how defendants' conduct resulted in harm to themselves).

Similarly, courts have rejected application of *Noerr-Pennington* to state law claims. *See, e.g., Calabrese v. CSC Holdings, Inc.*, 2004 WL 3186787, at *2 (E.D.N.Y. July 19, 2004) ("'[i]t is well settled that First Amendment rights are not immunized from regulation when they are used as an integral part of conduct which violates a valid statute'") (*quoting California Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 514 (1972)).

The current action does not prevent or otherwise interfere with Defendants' ability to file foreclosure lawsuits; in fact, the suit has nothing to do with the filing of foreclosure actions. Rather, the instant case merely addresses Defendants' practice – after the residential foreclosure lawsuit is filed – of willfully failing to file RJIs, as required by New York's foreclosure prevention laws, and seeks to end this practice of unjustifiable delay. Because this action does not preclude Defendants from filing cases or petitioning the government for redress and, in fact, encourages them to prosecute their cases to completion, *Noerr-Pennington* simply does not apply. Furthermore, as cited above, courts around the country have concluded that the *Noerr-Pennington* Doctrine does not immunize those who engage in unlawful debt collection in violation of the FDCPA and state law, which is the activity in question here.[14]

## VI.    THE COURT SHOULD NOT ABSTAIN

Abstention is an "extraordinary and narrow" exception to a federal court's duty to exercise its jurisdiction. *F.D.I.C. v. Four Star Holding Co.,* 178 F.3d 97, 101 (2d Cir. 1999);

---

[14] Even if the Court were to find that the *Noerr-Pennington* doctrine does apply and Defendants are immune from liability, Defendants' argument ignores the "sham exception" to the doctrine. The "sham exception" "excludes any abuse of process that bars access to the courts, such as 'unethical conduct in the setting of the adjudicatory process . . . .'" *Sykes v. Mel Harris & Assocs., LLC,* 757 F. Supp. 2d 413, 429 (S.D.N.Y. 2010) (*quoting Landmarks Holding Corp. v. Bermant,* 664 F.2d 891, 896 (2d Cir. 1981)) (internal quotations and citation omitted). Here, Defendants' knowing violation of court-imposed rules gives rise to liability under the FDCPA and GBL § 349 and any attempt to invoke the protections of the First Amendment to perpetuate this improper activity and continue to violate court-mandated rules should be rejected.

*accord In re Joint E. and S. Dist. Asbestos Litig.,* 78 F.3d 764, 775 (2d Cir. 1996) (*quoting*

*Colorado River Water Cons. Dist. v. United States,* 424 U.S. 800, 813 (1976)).  As a matter of

policy, federal courts should abstain from hearing cases "only under very unusual or exceptional

circumstances."  *Williams v. Lambert*, 46 F.3d 1275, 1281 (2d Cir. 1995); *United Fence &*

*Guard Rail Corp. v. Cuomo,* 878 F.2d 588, 593 (2d Cir. 1989); *accord West v. Village of*

*Morrisville,* 728 F.2d 130, 135 (2d Cir. 1994).

### A.      The *Pullman* Abstention Doctrine Is Inapplicable

Defendants argue that this Court must abstain under the *Pullman* abstention doctrine.

*Pullman* abstention is a "limited judge-made doctrine created by the Supreme Court" and does

not apply to this case. *Pharmaceutical Soc'y of the State of New York, Inc. v. Lefkowitz,* 586 F.2d

953, 955-56 (2d Cir. 1978) (*citing Railroad Comm'n v. Pullman Co.,* 312 U.S. 496 (1941)).

Under the *Pullman* doctrine, "'federal courts should abstain from decision when difficult and

unsettled questions of state law must be resolved before a *substantial federal constitutional*

*question* can be decided." *Williams,* 46 F.3d at 1281  (*quoting Hawaii Hous. Auth. v. Midkiff,*

467 U.S. 229, 236 (1984)) (emphasis added).

Three conditions must be met for *Pullman* abstention to apply: (1) the state statute at

issue must be unclear; (2) resolution of the *federal constitutional issue* must depend on the state

law interpretation; and (3) it must be possible to interpret the state law so as to modify or avoid

the federal constitutional issue.  *See Pharmaceutical Soc'y of the State of New York, Inc.,* 586

F.2d at 956; *Williams*, 46 F.3d at 1281; *McRedmond v. Wilson,* 533 F.2d 757, 760 (2d Cir. 1976).

*Pullman* abstention is clearly inapplicable here.  The second and third *Pullman* factors –

requiring resolution of a *federal* constitutional issue – are not met because there is no federal

constitutional issue to be decided in this matter.  Instead, the issue is whether Defendants'

20

conduct in preventing homeowners from accessing the CPLR 3408 settlement conference process violates one federal statute, the FDCPA, and one state statute, GBL § 349. A ruling by this Court holding Defendants liable under the FDCPA and GBL § 349 will have no impact on the manner in which the State of New York governs its foreclosure process because such a ruling against Defendants would not require the State of New York to change its foreclosure process. Instead, such a ruling would encourage Defendants and other foreclosure law firms to comply with New York's foreclosure prevention laws. Moreover, as to the first factor, New York's foreclosure prevention laws at issue here are clear and unambiguous. (*See* Point II, *supra*). Therefore, *Pullman* abstention does not apply and Defendants' request for the Court to abstain from hearing Plaintiff's FDCPA and GBL § 349 claims must be denied.

### B.   The *Colorado River* Doctrine Is Irrelevant

Defendants also argue that this Court must abstain from hearing Plaintiffs' claims under the *Colorado River* abstention doctrine. Unlike other abstention doctrines related to "considerations of proper constitutional adjudication and regard for federal-state relations," *Colorado River* abstention is extremely narrow because it rests only on considerations of judicial efficiency. *Colorado River*, 424 U.S. at 817. The high bar for abstention means that, "[a]lthough duplicative litigation as between federal courts is ordinarily to be avoided, . . . 'the pendency of an action in state court is no bar to proceedings concerning the same matter in Federal court' [due to] 'the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them.'" *Woodford v. Cmty. Action Agency, Inc.,* 239 F.3d 517, 522 (2d Cir. 2001) (*citing Colorado River,* 424 U.S. at 817). *Colorado River* abstention is permitted only in the rare case where (1) the relevant state and federal actions are "concurrent" or "parallel" and

21

(2) evaluation of a six-factor test weighs in favor of abstention. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 16 (1983).

"Suits are parallel when substantially the same parties are contemporaneously litigating substantially the same issue in another forum." *Dittmer v. County of Suffolk*, 146 F.3d 113, 118 (2d Cir. 1998) (*quoting Day v. Union Mines, Inc.,* 862 F.2d 652, 655 (7th Cir. 1988)); *Wells Fargo Century, Inc. v. Hanakis,* 2005 WL 1523788, at *8 (E.D.N.Y. June 28, 2005). When dismissal of the federal proceeding would leave a defendant free from any proceeding on the issues in question, abstention is unwarranted. *DDR Constr. Serv., Inc. v. Siemens Ind., Inc.,* 770 F. Supp. 2d 627, 645 (S.D.N.Y 2011); *Hanakis,* 2005 WL 1523788, at *9-10.

Here, abstention under *Colorado River* is inappropriate because neither of the Defendants are parties to the state court foreclosure actions against the named Plaintiffs. Defendants' absence from the state court foreclosure actions should be dispositive of the *Colorado River* abstention issue. Similar to *Hanakis*, dismissal of this federal case would leave Defendants free from *any* proceeding on the issues of whether their repeated violations of UR § 202.12-a(b) make them liable to Plaintiffs and the proposed class under the FDCPA and GBL § 349. Moreover, Defendants no longer represent most, if not all, of the plaintiff banks and loan servicing companies in the state court foreclosure actions (who are also not parties to this litigation) and no longer even represent the foreclosing plaintiffs in the two named Plaintiffs' underlying foreclosure actions. Because dismissal of this case would leave Defendants free from any proceeding on the issue of their FDCPA and GBL § 349 liability for their violations of UR § 202.12-a(b), Defendants' request for the court to abstain from hearing this case under the *Colorado River* abstention doctrine must be denied.

Furthermore, the issues in the state court foreclosure actions are not similar to the issues in this action.  In the state court foreclosure actions, the issues include (a) whether the defendant-homeowners in those cases defaulted on their mortgage loans and (b) whether the plaintiff-banks and servicing companies are entitled to repossess the homeowners' property as a result of the alleged defaults. In contrast, the issues in this action are whether Defendants' conduct violates the FDCPA and GBL § 349.  *Colorado River* has no applicability here because the issues in this case are not similar to the issues in the state court foreclosure actions.  Consequently, Defendants' request for dismissal under the *Colorado River* abstention doctrine must be denied.

## VII.   DEFENDANT STEVEN J. BAUM IS INDIVIDUALLY LIABLE

Defendants argue that references in the Complaint to the Settlement Agreement between Steven J. Baum, P.C. and the United States Attorney's Office for the Southern District of New York, as well as the Congressional inquiry into Defendants' foreclosure practices, are incorrect bases for holding Defendant Steven J. Baum individually liable in this action.  Defendants' analysis misses the mark: it is Defendant Baum's own conduct that imposes individual liability on him, as the Complaint clearly states.

"The law is clear [ . . . ] that officers and employees of the debt collecting agency may be jointly and severally liable [under the FDCPA] with the agency where they have affirmatively acted." *Ohlson v. Cadle Co.*, 2006 WL 721505, at *3 (E.D.N.Y. Mar. 21, 2006); *see also Teng v. Metropolitan Retail Recovery Inc.*, 851 F. Supp. 61, 67 (E.D.N.Y. 1994); *Williams v. Professional Collection Servs., Inc.*, 2004 WL 5462235, at *4 (E.D.N.Y Dec. 7, 2004) ("[H]igh-ranking employee, executive, or director of a collection agency may fit within the statutory definition of a debt collector . . . .").

23

Here, Defendant Baum in his individual capacity affirmatively acted to deceptively collect debts, making him individually liable. Not only do Plaintiffs allege that Defendant Baum "is the controlling shareholder of Steven J. Baum, P.C.," "is involved in individual case-level decision-making at his law firm," and "is a 'debt collector' as defined by the FDCPA," Compl. ¶ 28, all allegations in the Complaint are made against both defendants, Steven J. Baum, P.C. and Steven J. Baum. (Compl. ¶ 5.) As with Defendant Steven J. Baum, P.C., Defendant Baum prevented homeowners from accessing the settlement conference part by failing to file the specialized RJIs in his cases as mandated by UR § 202.12-a(b). By not filing the specialized RJIs, Defendant Baum ensures that most of the homeowners he sues, including Plaintiffs, will not be able to swiftly access the settlement conference part where they stand the best chance of obtaining a modification. Instead, they will be left in a limbo state while Baum's legal fees, delinquent interest, and other foreclosure related fees continue to increase. Additionally, Defendant Baum's same affirmative actions make him individually liable under GBL § 349. Through Defendant Baum's deceptive practices, Plaintiffs have been injured by the resulting increased monthly fees as a result of being stranded in foreclosure limbo.

References to Defendant Steven J. Baum, P.C.'s Settlement Agreement with the United States Attorney's Office for the Southern District of New York and the letter from Representative Elijah E. Cummings were included in the Complaint to demonstrate the culture of disregard for homeowners that appears to have permeated the law offices of Defendant Baum. These documents, however, are not relied upon as a basis for adding Defendant Baum as a Defendant. As delineated above, there is no need for such reliance because Plaintiffs have alleged that Defendant Baum is individually liable for the FDCPA and GBL § 349 violations as a result of his own affirmative actions.

24

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants'

Motion to Dismiss the Complaint in its entirety.

Dated:   June 18, 2012
       New York, New York         Respectfully Submitted,

                                             HARWOOD FEFFER LLP

                 By:                                   

                                     Robert I. Harwood (RH 3286)
                                     James G. Flynn (JF 5929)
                                     488 Madison Avenue, 8th Floor
                                     New York, New York 10022
                                     Tel:  212-935-7400
                                     Fax: 212-753-3630

                                     MFY LEGAL SERVICES, INC.
                                     Elizabeth M. Lynch (EML 8000)
                                     Adam H. Cohen (AHC 5087),
                                     of counsel to Jeanette Zelhof, Esq.
                                     299 Broadway, 4th Floor
                                     New York, New York 10007
                                     Tel:  212-417-3700
                                     Fax: 212-417-3891

# Exhibit A



Mailing Address
P.O. Box 1291
Buffalo, NY 14240-1291

Overnight Mail
220 Northpointe Parkway
Suite G
Amherst, NY 14228

Phone Number
716-204-2400

Fax Number
716-204-4600

Web Site
WWW.MBAUM.COM

## STEVEN J. BAUM, P.C.

### A T T O R N E Y S   A T   L A W

November 21, 2011

**FOR IMMEDIATE RELEASE**                                   Contact:
                                                            Earl Wells, e3communications
                                                            716-854-8182

### STEVEN J. BAUM P.C. FILES WARN NOTICE

BUFFALO, NY – Steven J. Baum P.C. has filed a Worker Adjustment and Retraining Notification (WARN) notice with the appropriate government entities, including Erie County, the Town of Amherst, the Buffalo and Erie County Workforce Investment Board and the New York State Department of Labor.  These notifications are required by federal labor law as it pertains to mass layoffs which is occurring at the law firm.  Simultaneous to the filing, employees at the law firm also were provided notification about the layoffs.

The WARN Act stipulates "a covered employer must give notice if there is to be a mass layoff which does not result from a closing of a plant, but which will result in an employment loss at an employment site during any 30-day period for 500 or more employees, or 50-99 employees if they make up at least 33% of the employer's active workforce."

"We will fulfill all of our obligations under WARN and during this process we will also fulfill our remaining work on behalf of our clients," said Steven J. Baum.  "Disrupting the livelihoods of so many dedicated and hardworking people is extremely painful, but the loss of so much business left us no choice but to file these notices."

Steven J. Baum P.C. employs approximately 67 full and part-time employees at its Amherst location and approximately 22 full and part-time employees in Long Island.

-30-

# Exhibit B

ATTORNEY GENERAL OF THE STATE OF NEW YORK
BUREAU OF CONSUMER FRAUDS & PROTECTION

---

In the Matter of the

Investigation by Eric T. Schneiderman,
Attorney General of New York, of

     STEVEN J. BAUM P.C., PILLAR PROCESSING, LLC,
     STEVEN J. BAUM, individually and as principal of
     Steven J. Baum, P.C. and Pillar Processing, LLC,
     and BRIAN KUMIEGA, individually and as partner of
     Steven J. Baum, P.C., and principal of Pillar Processing, LLC

          Respondents.

Assurance No. 12-002

---

## ASSURANCE OF DISCONTINUANCE

The Office of Attorney General of the State of New York (the "OAG") has been

conducting an ongoing investigation, pursuant to Executive Law § 63(12) and General Business

Law ("GBL") § 349, of the business practices of Steven J. Baum P.C.; the New York operations

of Pillar Processing, LLC; Steven J. Baum, individually and as principal of Steven J. Baum P.C.

and Pillar Processing, LLC; and Brian Kumiega, individually and as partner of Steven J. Baum

P.C. and principal of Pillar Processing, LLC (collectively, "respondents").  This Assurance of

Discontinuance ("Assurance") contains findings of the OAG's investigation (the "Investigation")

insofar as it concerns respondents' foreclosure-related law practices, and the relief agreed to by

the OAG and respondents (collectively, the "parties").

## I.     FINDINGS

### Parties

    1.     Respondent Steven J. Baum P.C. ("Baum Firm") is a law firm with its principal

place of business at 220 Northpointe Parkway, Suite G, Amherst, New York.  The Baum Firm

1

also has a smaller office in Westbury, New York.  Until recently, the Baum Firm was one of the largest volume mortgage foreclosure firms in New York State.  In November 2011, shortly after Fannie Mae and Freddie Mac barred mortgage servicers from referring new foreclosure proceedings to the Baum Firm, the Baum Firm announced layoffs of its 89 attorneys.  The Baum Firm largely ceased operations on or about December 31, 2011 and is finalizing the winding down of its operations.

      2.     Respondent Pillar Processing, LLC ("Pillar") is a business service provider with its principal place of business at 220 Northpointe Parkway, Suite G, Amherst, New York.  Steven J. Baum formed Pillar in 2007 to provide law-related back office and administrative support for the Baum Firm and other law firms.  Steven J. Baum sold Pillar to a private equity firm the same year.  Although legally separate entities, the Baum Firm and Pillar shared some of the same office suites.  Prior to 2007, much of the Baum Firm's foreclosure work was handled by non-attorney staff employed by the Baum Firm.  When Pillar became a separate legal entity in November 2007, these individuals became Pillar employees.  In 2009, Pillar moved to a professional employer organization model, and the Baum Firm leased the Pillar employees.  In November 2011, Pillar announced layoffs of its 610 New York employees.  Pillar largely ceased its New York operations on or about December 31, 2011 and is finalizing the winding down of those operations.

      3.     Respondent Steven J. Baum is the president of the Baum Firm and a founder, the former Chief Executive Officer, and indirect partial owner of Pillar through Pillar Holdings LLC ("Pillar Holdings").  Baum was an attorney at Marvin R. Baum, PC, the predecessor to the Baum Firm since 1986 and became its president in 1999.  In 2001, Marvin R. Baum, PC was renamed the Baum Firm.  Baum has been involved in the management of the Baum Firm and Pillar and

assisted in the automation of the foreclosure processes used by the Baum Firm and Pillar.

4.      Respondent Brian Kumiega is the secretary and managing partner of the Baum Firm, the former president of Pillar and an indirect partial owner of Pillar through Pillar Holdings.  He has been involved in the management and the day-to-day operations of the Baum Firm and Pillar.  Kumiega attended daily Baum Firm management meetings together with other management attorneys and personnel and his approval was required to change certain procedures at the Baum Firm.  Kumiega was also principally responsible for administrative oversight of Pillar.

**Background**

5.      Beginning in 2007, the nationwide mortgage crisis led to a dramatic increase in the number of New York foreclosure filings.  The Baum Firm, one of the largest foreclosure firms in New York, was responsible for filing over forty percent of the foreclosure actions in New York State.  In 2006, the Baum Firm filed approximately 9,000 foreclosure actions, which grew to over 100,000 foreclosure actions (cumulatively) between 2007 and 2010.

6.      The Baum Firm represented many of the largest servicers of residential mortgage loans, including among others Wells Fargo, JPMorgan Chase, Bank of America, HSBC and Citibank.

7.      By the summer of 2010, it became clear that many mortgage servicers were engaging in widespread abuses to handle the increased volume of foreclosures actions by executing affidavits and other legal documents attesting to personal knowledge they did not have about the mortgages and properties, a practice that has been referred to as "robo-signing".

8.      The widespread practice of robo-signing prompted a number of investigations by federal and state regulators and law enforcement, including the New York Attorney General.  In

addition, the Office of the Comptroller of the Currency ("OCC") issued cease and desist orders against fourteen of the nation's mortgage loan servicers finding that mortgage servicers filed affidavits "making various assertions . . . in which the affiant represented that the assertions in the affidavit were made based on personal knowledge or based on a review by the affiant of the relevant books and records, when, in many cases, they were not based on such personal knowledge or review of the relevant books and records." The OCC further found that mortgage servicers had "failed to sufficiently oversee counsel and other third-party providers handling foreclosure related servicers."

9.       In an attempt to correct these widespread servicer abuses, as of October 20, 2010 the New York State Court System required foreclosure attorneys to submit an affirmation attesting to the accuracy of the foreclosure summons and complaint they filed ("Lippman Affirmation"). The Lippman Affirmation requirements led to a substantial decrease in the number of foreclosure filings by the Baum Firm and the withdrawal of a large volume of already filed foreclosure proceedings.

**The Baum Firm's Practices with Respect to Standing**

10.       Compounding the problem of robo-signing by servicers, the Baum Firm repeatedly filed complaints, affirmations and other legal papers in foreclosure and bankruptcy proceedings without taking appropriate steps to verify the accuracy of (i) the allegations, (ii) the plaintiff's right to foreclose or (iii) its ability to file a bankruptcy proof of claim.[1]

11.       To maximize efficiencies and the volume of foreclosure filings, the Baum Firm created a highly compartmentalized system for processing foreclosures. The Baum Firm relied on Pillar, comprised of approximately twenty-five departments staffed by non-attorneys, to

---

[1] Many of the problematic foreclosure practices described in this Assurance were also used in bankruptcy matters related to foreclosures.

4

handle the bulk of the work in each stage of the foreclosure proceeding, from client referral through foreclosure sale. Complaints and other legal documents were generated through the Baum Firms' computerized data system into which Pillar employees input basic information about each delinquent mortgage with insufficient attorney supervision.

12.     Under New York law, a foreclosing plaintiff has standing where it is both the holder or assignee of the subject mortgage and the holder or assignee of the underlying note, either by physical delivery or execution of a written assignment prior to the commencement of the foreclosure action. However, Pillar employees did not always have access to promissory notes when preparing foreclosure complaints, nor were they trained to review promissory notes. In addition, from at least 2007 until sometime in 2008, Pillar employees were not instructed to look for mortgage assignments when preparing the complaints. Instead, the form complaints used at that time stated that "the mortgage was to be assigned." In these cases, mortgage assignments were not executed until after the filing of the complaint.

13.     From at least 2007 until sometime in 2009, Baum Firm attorneys repeatedly verified complaints in foreclosure actions stating, among other things, that the plaintiff was "the owner and holder of the note and mortgage being foreclosed" and that the attorney had: (i) read the foregoing summons and complaints and knew the contents thereof; and (ii) the grounds for belief as to all matters in the Complaint not stated to be upon his or her knowledge was based on the "original note, mortgage and/or financial documents, together with correspondence."

14.     In fact, in many cases, particularly where the underlying loan was securitized and thus the original lender was no longer the holder of the note and mortgage, the plaintiff did not provide the Baum Firm and the Baum Firm did not have in its possession at the time of the filing of a foreclosure action documentary proof that the plaintiff was the holder or owner of the note --

5

the usual prerequisites to standing under New York foreclosure law.

15.     Thus, in many of the cases filed by the Baum Firm, the mortgage had not yet been assigned in writing to the plaintiff; and/or the only photocopy of the note within the Baum Firm's possession, if any, did not bear endorsements showing it had been transferred to the plaintiff. Furthermore, attorneys routinely verified and signed complaints without reviewing the contents or the underlying documents such as the original note or mortgage.

16.     Moreover, even if the mortgage had been assigned, in many cases Baum attorneys acted as certifying officers of Mortgage Electronic Registration Systems, Inc. ("MERS"). Through corporate resolutions, MERS appointed several attorneys at the Baum Firm as "assistant secretaries and vice presidents," authorizing them to execute documents necessary to foreclose (including assignments and affidavits) on mortgages registered in the MERS System to various servicer members.  Thus, in foreclosure proceedings filed by the Baum Firm, Baum attorneys, including Kumiega, wearing their hat as MERS certifying officers, regularly assigned mortgages from MERS to the foreclosing parties that the Baum Firm represented.  This practice has been questioned by courts.  *See U.S. Nat'l Bank Ass'n v. Kosak*, 2007 WL 2480127, at *2 (N.Y. Sup. Ct. Sept. 4, 2007).

**Improper Verification and Notarization Process**

17.     Indeed, while Baum Firm attorneys were familiar with the standardized complaint forms, from at least 2007 through sometime in 2008, attorneys did not routinely see the actual complaints after they were generated.  Instead attorneys pre-signed and notarized verification and certification pages that were subsequently attached to the complaints by Pillar employees. The pre-signed and notarized pages were kept in drawers of Pillar employees, with each employee possessing stacks of between twenty-five and fifty pre-signed pages for each litigation

6

attorney.  After the verification and certification pages were attached to the complaints, the complaints were copied by an on-site copy service and the original summons, complaints and lis pendens were sent for filing at the end of each day with the various county clerks.

18.     Even after the practice of attaching pre-signed certification and verification pages to the complaints changed, attorneys continued to verify complaints without reading them. Although on occasion attorneys were only provided verification pages, Pillar employees typically brought each attorney folders of complaints for signature several times per day. Attorneys typically opened the folders, turned to the last page of the documents and signed their names without reading or reviewing the summons and complaints.[2]

19.     The Baum Firm stopped verifying complaints by 2010, adopted explicit procedures in late 2010 requiring attorneys to review complaints prior to signing them, and also instituted additional procedural safeguards in order to permit the Baum Firm to independently confirm the accuracy of certain of its clients' representations.  However, the Baum Firm continued to file foreclosure actions without always having the evidence or conducting the due diligence to determine that the plaintiff had the standing to bring the action.

20.     Until sometime in 2011, the Baum Firm also failed to properly notarize documents signed by its attorneys.  In violation of New York law as established by judicial and Department of State decisions, Baum Firm attorneys routinely signed documents such as complaint verification pages without being in the notaries' presence, or when documents were signed prior to notarization, did so without the required oath being administered.  Indeed, some notaries even notarized documents that were signed by an attorney who was not present in the state at the time the documents were notarized.

---

[2] These practices were widespread.  Memoranda to attorneys from the managing attorney of the litigation department exhorted attorneys to make sure that complaints and other documents were signed quickly and did not, until 2011, instruct attorneys to review the complaints prior to execution.

21.     In a significant number of cases handled by the Baum Firm, courts have concluded that the plaintiff had not adequately demonstrated its basis for the relief sought, or that the complaint or litigation pleadings contained an error.  *See, e.g., Federal Home Loan Mortgage Corp. v. Raia*, 2010 N.Y. Slip Op. 52003(U) (Dist. Ct. 2010); *Deutsche Bank v. McRae*, 894 N.Y.S.2d 720, 722-24 (N.Y. Sup. 2010); *JPMorgan Chase Bank NA v. George*, 2010 WL 1780952, *2-4 (N.Y. Sup. 2010); *In re Mims*, No. 10-14030 (Bankr. S.D.N.Y. 2010); *Citigroup Global Markets Realty Corp. v. Bowling*, 2009 N.Y. Slip Op. 52567(U) (Sup. Ct. Kings Co. 2009).  In addition, one court  has questioned the practice of Baum attorneys signing mortgage assignments on behalf of MERS in cases handled by the Baum Firm.  *See, e.g., LaSalle Bank National Association v. Smith, 2010 WL 1007826, *3-5 (N.Y. Sup. Mar. 22, 2010); Deutsche Bank NA  v. Campbell, 2008 WL 5220543 (N.Y. Sup. Dec. 16, 2008).*

**Failure to File Specialized Requests for Judicial Intervention**

22.     Pursuant to New York court rules, a specialized Request for Judicial Intervention form ("RJI") must be filed in residential foreclosure actions at the time proof of service of the summons and complaint is filed with the county clerk.  See 22 N.Y.C.R.R. § 202.12-a(b).  The Lippman Affirmation, which requires attorney certification of the accuracy of plaintiffs' filings in foreclosure proceedings, must be filed simultaneously. [3]

23.     In the vast majority of cases, the Baum Firm failed to file the RJI and Lippman Affirmation until many months after proof of service had been filed.  Because the filing of the RJI triggers the scheduling of a mandatory settlement conference and notification of local housing counselors that the homeowner is at risk of foreclosure, the Baum Firm's untimely filing of the RJI had the effect of delaying the holding of a formal settlement conference.

---

[3] The original Administrative Order 548-10 was later slightly modified in March 2011 by Administrative Order 431-11.  However, the timing of the required filing remained the same.

24.     New York Executive Law § 63(12) prohibits persons or business entities from engaging in repeated fraudulent or illegal acts or otherwise demonstrating persistent fraud or illegality in the carrying on, conducting or transaction of business.

25.     New York GBL § 349 prohibits deceptive acts or practices in the conduct of any business, trade or commerce in this State.

26.     The OAG has concluded that there is sufficient evidence to support a claim that the practices described above constitute repeated fraudulent and illegal acts under Executive Law § 63(12) and repeated violations of GBL § 349.

IT IS HEREBY AGREED by respondents Steven J. Baum and Brian Kumiega, and respondents Steven J. Baum P.C., Pillar Processing, LLC, their principals, successors and assigns and on behalf of their agents, representatives, employees and by any corporation, subsidiary or division through which it acts or hereafter acts, as follows:

## II.     PROSPECTIVE RELIEF

WHEREAS, the OAG has been conducting an ongoing investigation, pursuant to Executive Law § 63(12) and GBL § 349, of the business practices of respondents related to respondents' foreclosure-related law practices;

WHEREAS, respondents neither admit nor deny the OAG's Findings (1) - (26) above;

WHEREAS, the OAG is willing to accept the terms of the Assurance pursuant to New York Executive Law § 63(15) and to discontinue its Investigation with respect to respondents; and

WHEREAS, the parties each believe that the obligations imposed by this Assurance are prudent and appropriate;

IT IS HEREBY UNDERSTOOD AND AGREED, by and between the parties that:

27.     Respondents shall comply fully with General Business Law § 349, Executive Law § 63 (12) and Uniform Rule 202.12-a(b).

28.     Respondents Steven J. Baum and Brian Kumiega shall not represent lenders or servicers in any new residential mortgage foreclosure action, any application in bankruptcy court to lift the automatic stay for purposes of initiating or continuing a residential mortgage foreclosure action, or any other action asserting rights or seeking remedies relating to any residential mortgage ("Foreclosure Proceeding") after the effective date of this Assurance, which shall be the date the Assurance is executed by the parties ("Effective Date") for a period of two years from the Effective Date.  Nothing in this Assurance shall prohibit Baum or Kumiega from (i) representing lenders or servicers in Foreclosure Proceedings for which the Baum Firm was previously retained as legal counsel ("Current Proceedings") until such time as those proceedings are transferred to another law firm, (ii) appearing or representing lenders or servicers in any action when required to do so by a court order, administrative rule, or any federal or state law or regulation, or (iii) otherwise practicing law.  Baum and Kumiega shall make their best efforts to transfer Current Proceedings expeditiously.

## II. PAYMENT

29.     Respondents shall pay $4,000,000.00 by certified check(s) to the State of New York Department of Law for penalties, costs, fees and any other lawful purpose, including funding programs that offer assistance to consumers facing foreclosure or victims of predatory lending practices, pursuant to the following schedule:

(a)     $2,000,000.00 within ten (10) days of the Effective Date;

(b)     $1,000,000 on or before  May 1, 2012;

(c)     $1,000,000 on or before July 1, 2012;

10

The certified checks shall be delivered to:

> New York State Office of the Attorney General
> Consumer Frauds & Protection Bureau
> 120 Broadway, 3rd Floor
> New York, New York 10271
> ATTN: Laura J. Levine, Assistant Attorney General

30.     All payments and all correspondence relating to this Assurance shall reference Assurance Number 12-002.

## V.     **MISCELLANEOUS**

31.     This Assurance is entered into pursuant to Executive Law § 63(15). As such, evidence of a violation of the Assurance by respondents shall constitute *prima facie* proof of a violation of Executive Law § 63(12) and GBL § 349 in any civil action or proceeding subsequently commenced by the OAG.

32.     The OAG has agreed to the terms of this Assurance based on, among other things, the representations made to the OAG by respondents and its counsel and the OAG's own factual investigation as set forth in Findings (1) - (26) above. To the extent that any material representations are later found to be inaccurate or misleading, this Assurance is voidable by the OAG in its sole discretion.

33.     The OAG hereby agrees, pursuant to Executive Law § 63(15), to accept this Assurance in lieu of commencing a civil action or proceeding in connection with the enforcement of Executive Law § 63(12) or GBL § 349 for the acts, practices and omissions described in the Findings. This Assurance will conclude the Investigation and release all claims by the OAG against respondents for the acts, practices and omissions described in the Findings.

34.     No representation, inducement, promise, understanding, condition, or warranty not set forth in this Assurance has been made to or relied upon by respondents in agreeing to this Assurance.

35.     Respondents represent and warrant, through the signatures below, that the terms and conditions of this Assurance are duly approved, and execution of this Assurance is duly authorized.  Respondents shall not take any action expressing the view that this Assurance is without factual basis.  Nothing in this paragraph affects respondents' (i) testimonial obligations or (ii) right to take any legal or factual positions in defense of litigation or other legal proceedings or governmental investigations to which the OAG is not a party.   This Assurance is not intended for use by any third party in any litigation or other proceeding and is not intended, and should not be construed, as an admission of wrongdoing or liability or the validity of the Findings by respondents in any such litigation or proceeding.

36.     Respondents agree to cooperate fully in any future OAG investigation, and in any civil or criminal prosecution of other persons or entities that provide foreclosure services in New York.  Such cooperation includes, but is not limited to, providing truthful testimony under oath before the OAG and any other tribunal or court of law, and providing documentary evidence as requested by the OAG.  Respondents retain the right to assert any applicable privileges, including the attorney-client privilege.  This Assurance does not alter respondents' independent obligation to provide documents and witnesses pursuant to subpoena.

37.     This Assurance may not be amended except by an instrument in writing signed on behalf of all the parties to this Assurance.

38.     This Assurance shall be binding on and inure to the benefit of the parties to this Assurance and their respective successors and assigns, provided that no party, other than the

OAG, may assign, delegate, or otherwise transfer any of its rights or obligations under this Assurance without the prior written consent of the OAG, except to a successor-in-interest.

39.     In the event that any one or more of the provisions contained in this Assurance shall for any reason be held to be invalid, illegal, or unenforceable in any respect, in the sole discretion of the OAG, such invalidity, illegality, or unenforceability shall not affect any other provision of this Assurance.

40.     To the extent not already provided under this Assurance, respondents shall, upon request by the OAG, provide all documentation and information reasonably necessary for the OAG to verify compliance with this Assurance.

41.     Acceptance of this Assurance by the OAG shall not be deemed approval by the OAG of any of the practices or procedures referenced herein, and respondents shall make no representation to the contrary.

42.     If a court of competent jurisdiction determines that respondents have breached this Assurance, respondents shall pay to the OAG the reasonable cost, if any, of such determination and of enforcing this Assurance, including without limitation reasonable legal fees, expenses, and court costs. Prior to the filing of any action alleging a breach of this Assurance, the OAG shall provide written notice to respondents of the alleged breach and provide respondents with a two-week period from receipt of such notice to demonstrate to the OAG why such an action should not be filed unless the OAG determines such notice is contrary to the public interest.

43.     Nothing contained herein shall be construed as to deprive any person of any private right under the law.

13

44.     This Assurance constitutes the entire agreement between the OAG and respondents and supersedes any prior communication, understanding or agreement, whether written or oral, concerning the subject matter of this Assurance.

45.     Any notices, statements or other written documents required by this Assurance shall be provided by first-class mail and email to the intended recipient at the addresses set forth below, unless a different address is specified in writing by the party changing such address:

> For The People of the State of New York:
>
> New York State Office of the Attorney General
> Consumer Frauds & Protection Bureau
> 120 Broadway, 3rd Floor
> New York, New York 10271
> ATTN: Laura J. Levine, Assistant Attorney General
>
>
> For respondents:
>
> Elkan Abramowitz, Esq.
> Morvillo, Abramowitz, Grand, Jason, Anello & Bohrer, P.C.
> 565 Fifth Avenue
> New York, NY 10017

Such notices, statements and documents shall be deemed to have been given upon mailing.

46.     Respondents shall provide written notice to the OAG of any new law-related employment within ten days of such change for a period of five years from the Effective Date.

47.     The OAG finds the relief and agreements contained in this Assurance appropriate and in the public interest.  This Assurance shall be governed by the laws of the State of New York without regard to any conflict of laws principles.

48.     The Assurance may be executed in one or more counterparts, each of which shall be deemed an original but all of which together shall constitute one instrument.

IN WITNESS WHEREOF, this Assurance is executed by the parties hereto on the 16th

day of February, 2012.


Steven J. Baum, P.C.

By: _____
    Name: Steven J. Baum
    Title: president


Pillar Processing, LLC

By: _____
    Name: Lawrence S. Barker
    Title: Lawful
          agent + attorney in fact

Steven J. Baum

By: _____
    Name: Steven J. Baum


Brian Kumiega

By: _____
    Name: Brian Kumiega


Eric T. Schneiderman
Attorney General of the State of New York

By: _____
    Laura J. Levine
    Assistant Attorney General


15

By: _____
    Jane M. Azia
    Bureau Chief
    Consumer Frauds & Protection

16

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

IMOGENE COLE and GEORGIA BROWN,
individually and on behalf of
all others similarly situated,

                          Plaintiffs,

            - against -

STEVEN J. BAUM and STEVEN J. BAUM, P.C.,

                          Defendant.

Case No.: CV-11-3779 (SLT) (SMG)

## CERTIFICATE OF SERVICE

I, Joy Glass, hereby certify that I am over the age of 18 years, am employed by the law

firm of Harwood Feffer LLP and that on June 18, 2012, the foregoing

**MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

was served via U.S. Regular Mail in accordance with the Federal Rules of Civil Procedure, upon

the following:

Brett A. Scher, Esq.
Kaufman Dolowich Voluck & Gonzo LLP
135 Crossways Park Drive, Suite 201
Woodbury, New York 11797

Joy Glass