FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y

★  JUL 11 2013  ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

————————————————————————X

IMOGENE COLE and GEORGIA BROWN,          **MEMORANDUM AND ORDER**
individually and on behalf of all        11-CV-3779 (SLT)(SMG)
others similarly situated,
                      Plaintiffs,

     - against -

STEVEN J. BAUM and STEVEN J. BAUM, P.C.,
                      Defendants.

————————————————————————X

**TOWNES**, U.S. District Judge

     Plaintiffs, Imogene Cole and Georgia Brown ("Plaintiffs"),

bring this putative class action against Steven J. Baum, P.C. and

its principal Steven J. Baum (together "Defendants"), pursuant to

the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §

1692 *et seq.*, alleging that Defendants used false, deceptive, or

misleading representation, or unfair or unconscionable means, to

collect a debt by failing to file a specialized Request for

Judicial Intervention ("RJI") at the same time they filed proof

of service of the summonses and complaints in foreclosure actions

involving Plaintiffs.  Plaintiffs also allege that this failure

violated New York General Business Law ("NYGBL") § 349.

Defendants now move to dismiss Plaintiffs' complaint pursuant to

Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which

relief can be granted.  For the reasons discussed infra,

1

Defendants' motion is granted.

I.    Background

As noted above, Plaintiffs' pleadings principally allege
that Defendants violated the FDCPA and a state statute, NYGBL §
349, by failing to comply with procedural requirements set forth
in section 3408 of New York Civil Practice Law and Rules ("CPLR")
and certain rules established by the Chief Administrator of the
Courts for implementing section 3408, to wit 22 NYCRR § 202.12-a
("Section 202.12-a").  Plaintiffs' pleadings describe these
procedural requirements at length and some familiarity with these
two provisions is necessary to understand the gist of Plaintiffs'
claims.  Accordingly, before discussing the factual allegations
relating to Plaintiffs, the Court will describe these state-law
provisions in some detail.


**CPLR 3408 and Section 202.12-a**

In the wake of the mortgage foreclosure crisis, the New York
State Legislature passed the Subprime Residential Loan and
Foreclosure Laws.  See L. 2008, c. 472.  These laws were codified
in various statutes, including CPLR 3408, and became effective on
August 5, 2008.  See L. 2008, c. 472, § 3; Wells Fargo Bank, N.A.
v. Meyers, 966 N.Y.S.2d 108, 109-10 (N.Y. App. Div. 2013).  In
pertinent part, CPLR 3408 provides for mandatory settlement

2

conferences in certain residential foreclosure actions.

Specifically, CPLR 3408(a) states:

> In any residential foreclosure action involving a home loan
> as such term is defined in section thirteen hundred four of
> the real property actions and proceedings law, in which the
> defendant is a resident of the property subject to
> foreclosure, the court shall hold a mandatory conference
> within sixty days after the date when proof of service is
> filed with the county clerk, or on such adjourned date as
> has been agreed to by the parties, for the purpose of
> holding settlement discussions pertaining to the relative
> rights and obligations of the parties under the mortgage
> loan documents, including, but not limited to determining
> whether the parties can reach a mutually agreeable
> resolution to help the defendant avoid losing his or her
> home, and evaluating the potential for a resolution in which
> payment schedules or amounts may be modified or other
> workout options may be agreed to, and for whatever other
> purposes the court deems appropriate.

The procedures and rules for CPLR 3408 settlement

conferences are set forth in Section 202.12-a, a rule promulgated

by the Chief Administrator of the Courts.  Notably, this rule

provides:

> At the time that proof of service of the summons and
> complaint is filed with the county clerk, plaintiff shall
> file with the county clerk a specialized request for
> judicial intervention (RJI), on a form prescribed by the
> Chief Administrator of the Courts, applicable to residential
> mortgage foreclosure actions covered by this section.  The
> RJI shall contain the name, address, telephone number and
> e-mail address, if available, of the defendant in the action
> and shall request that a settlement conference be scheduled.

22 NYCRR 202.12-a(b)(1).

The New York State Legislature has not prescribed any

particular sanction or penalty to impose upon a party found to

have failed to satisfy its obligations under CPLR 3408.  See

3

Wells Fargo Bank, 966 N.Y.S.2d at 118. Accordingly, the New York
State Courts have resorted to a variety of alternatives in an
effort to enforce the statutory mandates of CPLR 3408. See Id.
at 116. The Supreme Court of the State of New York, Appellate
Division, Second Department ("Second Department"), has held some
of these judicially created remedies to be impermissible. For
example, in IndyMac Bank F.S.B. v. Yano-Horoski, 912 N.Y.S.2d
239, 240 (N.Y. App. Div. 2010), the Second Department held that
the "severe sanction imposed by the [New York State] Supreme
Court of cancelling the mortgage and note was not authorized by
any statute or rule." Similarly, in Wells Fargo Bank, the Second
Department concluded that the order which compelled Wells Fargo
to "execute a final modification patterned after the terms of the
trial loan modification proposal and directing dismissal of the
complaint" "was unauthorized and violated the Contract Clause and
Wells Fargo's due process rights." Id. at 118. However, neither
the Second Department nor any other New York State appellate
court has endorsed any particular sanction.

**The Facts Alleged in this Case**

The Amended Complaint ("Am. Compl.") in this case, the
allegations of which are assumed to be true for purposes of this
motion to dismiss, principally alleges a violation of Section
202.12-a. That pleading alleges that as of November 2011--the

4

time the Amended Complaint was filed--Plaintiffs both owned real property in Queens, New York, which had been mortgaged to secure loans made to them by financial institutions. (Am. Compl. ¶¶ 86-87, 101.)  Plaintiffs fell behind on their mortgage payments, prompting the financial institutions to commence foreclosure proceedings.  (Id. ¶¶ 90-91, 103-04.)  In both cases, those proceedings were prosecuted by defendant Steven J. Baum, P.C. ("the P.C."), one of the largest foreclosure law firms in New York State.  (Id. ¶¶ 30, 83, 91, 104.)  Defendant Steven J. Baum ("Baum") is the controlling shareholder of the P.C., and is "involved in individual case-level decision-making" at the law firm.  (Id. ¶ 28.)

In both cases, the P.C. filed with the court proof of service of the summons and complaint. (Id. ¶¶ 92, 104.)  However, in neither case did the P.C. file a specialized RJI form contemporaneous with their filings of the proof of service of the summons and complaint. (Id. ¶¶ 92-93, 105-06.)

On or about August 3, 2011, Plaintiffs commenced this action.  According to Plaintiffs' Amended Complaint, Defendants' failure to file the specialized RJI forms as required by Section 202.12-a prevented Plaintiffs from resolving their mortgage loan delinquencies through the New York State statutorily mandated settlement conference process pursuant to CPLR 3408. (Id. ¶¶ 50-52, 117-18.)  Plaintiffs allege that Defendants' unlawful conduct

caused them to incur increased loan penalties and resulted in the accrual of unnecessary fees and expenses against the loan accounts. (Id. ¶¶ 124-25, 129-30.)

The Amended Complaint asserts three causes of action. In the first two causes of action, Plaintiffs allege that Defendants' omissions constituted violations of the FDCPA. The first cause of action alleges a violation of 15 U.S.C. § 1692e, which prohibits the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt." (Id. ¶¶ 123-25.) The second cause of action alleges a violation of 15 U.S.C. § 1692f, which prohibits the use of "unfair or unconscionable means to collect or attempt to collect any debt." (Id. ¶¶ 128-30.) Plaintiffs' third cause of action asserts a New York State law claim pursuant to NYGBL § 349. This statute prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in [New York]." (Id. ¶ 134, quoting NYGBL § 349(a).)

In lieu of answering the complaint, Defendants now move to dismiss the action pursuant to Fed.R.Civ.P. 12(b)(6). Defendants raise three points in their Memorandum of Law in support of their motion ("Defs.' Memo. of Law"). Point I, which alleges that Plaintiffs' claims fail to state a cause of action, contains five subsections. In the first two subsections, Defendants contend that Plaintiffs have failed to articulate a plausible claim

6

pursuant to Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007),
arguing that a violation of a court rule does not give rise to a
claim for relief. (Defs.' Memo. of Law at 9-12.)  In their third
subsection, they assert that Plaintiffs' FDCPA allegations should
be rejected because technical failures of state rules of
procedure do not amount to "false, deceptive, or misleading
representation" or "unfair or unconscionable means" in collecting
a debt. (Id. at 12-15.)  In the fourth subsection, Defendants
allege that Plaintiffs' claims are barred by the Noerr-Pennington
doctrine. (Id. at 15-17.)  In the fifth subsection, Defendants
contend that Plaintiffs' claim pursuant to NYGBL § 349 should be
dismissed as the complaint fails to allege that Defendants
engaged in consumer-oriented fraud, that any conduct was
deceptive or misleading in a material way, or that Defendants
caused any damages to Plaintiffs. (Id. at 17-21.)

In Point II, Defendants note that "[c]omity or abstention
doctrines may, in various circumstances, permit or require the
federal court to stay or dismiss" a federal action in favor of
state-court litigation. (Id. at 21 (quoting Exxon Mobil Corp. v.
Saudi Basic Indus. Corp., 544 U.S. 280, 282 (2005)).)  In
particular, Defendants assert that the Court should abstain from
hearing the claims alleged in the complaint on two bases.  First,
Defendants urge abstention pursuant to R.R. Comm'n of Tex. v.
Pullman Co., 312 U.S. 496 (1941), arguing that there are

7

ambiguities surrounding the controlling state rules. (Id. at 21-
22.) Second, Defendants seek abstention pursuant to Colorado
River Water Conservation Dist. v. U.S., 424 U.S. 800 (1976),
noting that there are parallel, ongoing state foreclosure actions
pending against Plaintiffs. (Id. at 22-23.)

In Point III, Defendants contend that if the Court exercises
jurisdiction over Plaintiffs' claims, then the claims should be
dismissed against Baum individually. Defendants contend that the
evidence relied upon by Plaintiffs fails to set forth a basis for
imposing individual liability. (Id. at 23-25.)

II.  Legal Standard

In considering a motion to dismiss pursuant to Rule
12(b)(6), a court must accept all factual allegations in the
complaint as true, and draw all reasonable inferences in the
plaintiff's favor. See Bell Atlantic Corp. v. Twombly, 550 U.S.
544, 555-56 (2007). A court's role at this stage is "not to
weigh the evidence that might be presented at a trial but merely
to determine whether the complaint itself is legally sufficient."
Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985). However,
"the tenet that a court must accept as true all of the
allegations contained in a complaint is inapplicable to legal
conclusions" or "[t]hreadbare recitals of the elements of a cause
of action, supported by mere conclusory statements." Ashcroft v.

Iqbal, 556 U.S. 662, 678 (2009).  To survive a motion to dismiss, a complaint must allege sufficient facts "to state a claim to relief that is plausible on its face."  Twombly, 550 U.S. at 570; see County of Erie, N.Y. v. Colgan Air, Inc., No. 12-1600-cv, 2013 WL 780991, at *1 (2d Cir. Mar. 4, 2013).  If plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed."  Id. at 570.


III. Discussion

     Since the only federal causes of action alleged by Plaintiffs are brought pursuant to the FDCPA, the Court will first address Defendants' argument that the Amended Complaint fails to state a claim under that statute.  The FDCPA is a consumer protection statute concerning debt collection activity and seeks to establish a "set of requirements that would constitute minimum national standards for debt collection practices" while leaving intact state laws which may provide higher levels of protection.  Romea v. Heiberger & Assocs., 163 F.3d 111, 118 (2d Cir. 1998); see Richardson v. Allianceone Receivables Mgmt., Inc., No. 03 Civ. 5519(DLC), 2004 WL 867732, at *2 (S.D.N.Y. Apr. 23, 2004).  In enacting the FDCPA, Congress sought to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively

9

disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." Hess v. Cohen & Slamowitz LLP, 637 F.3d 117, 120 (2d Cir. 2011) (internal citation and quotations omitted). Further, the statute serves "to protect consumers from deceptive or harassing actions taken by debt collectors with the purpose of limiting the suffering and anguish often inflicted by independent debt collectors." Gabriele v. American Home Mortg. Servicing, Inc., No. 12-985-cv, 2012 WL 5908601, at *3 (2d Cir. Nov. 27, 2012) (internal citations, quotations, and bracket omitted); see Jacobson v. Healthcare Fin. Servs., Inc., 516 F.3d 85, 91 (2d Cir. 1998) (the FDCPA's "overarching purpose" is to "deter[] deceptive conduct").

"Congress painted with a broad brush" in determining what actions are covered under the FDCPA. Pipiles v. Credit Bureau of Lockport, Inc., 886 F.2d 22, 27 (2d Cir. 1989). In seeking recovery under the statute, a consumer need not necessarily show "intentional conduct on the part of the debt collector." Ellis v. Solomon and Solomon, P.C., 591 F.3d 130, 135 (2d Cir. 2010); see 15 U.S.C. § 1692k; Bentley v. Great Lakes Collection Bureau, 6 F.3d 60, 63 (2d Cir. 1993) ("The FDCPA is a strict liability statute"). Moreover, as the FDCPA is a remedial statute, it must be construed liberally in favor of the consumer. See Clark v. Capital Credit & Collection Servs., Inc., 460 F.3d 1162, 1175-76 (9th Cir. 2006); Johnson v. Riddle, 305 F.3d 1107, 1117 (10th Cir.

10

2002).  "The FDCPA establishes a civil cause of action against
any debt collector who fails to comply with any provision of [the
statute]," Foti v. NCO Financial Sys., Inc., 424 F. Supp. 2d 643,
653 (S.D.N.Y. 2006) (internal quotations and citation omitted),
enabling aggrieved parties to recover damages, attorney's fees,
and costs.  See 15 U.S.C. § 1692k(a); Hecht v. United Collection
Bureau, Inc., 691 F.3d 218 (2d Cir. 2012).

Here, Plaintiffs allege violations of two specific
provisions of the FDCPA: 15 U.S.C. 1692e and 1692f.  Both of the
sections contain several subsections that provide a non-
exhaustive list of specific ways in which the statute may be
violated.  However, Plaintiffs do not invoke any particular
subsection under either Section 1692e or 1692f.

"'Generally, a plaintiff must satisfy three threshold
requirements in order to recover under the FDCPA: (1) The
plaintiff must be a 'consumer;' (2) the defendant must be a 'debt
collector;' and (3) the defendant must have committed some act or
omission in violation of the FDCPA.'"  Friedman v. Sharinn &
Lipshie, P.C., No. 12 CV 3452(FB)(CLP), 2013 WL 1873302, at *3-4
(E.D.N.Y. Mar. 28, 2013) (bracket omitted) (quoting Oscar v.
Prof'l Claims Bureau, Inc., No. CV11-5319 (SJF)(WDW), 2012 WL
2367128, at *3 (E.D.N.Y. Jun. 1, 2012)); see also Boosahda v.
Providence Dane LLC, 462 Fed. Appx. 331, 333 n. 3 (4th Cir.
2012).  In this case, Plaintiffs' Amended Complaint explicitly

11

alleges that Plaintiffs are consumers as that term is defined
pursuant to the FDCPA.  (Am. Compl. ¶¶ 26, 27.)  See 15 U.S.C. §
1692a(3) (defining consumer as "any natural person obligated or
allegedly obligated to pay any debt").  Plaintiffs' pleading also
alleges that Defendants are debt collectors as that term is
defined by 15 U.S.C. 1692a(6).  (Am. Compl. ¶¶ 28, 29.)  Although
there is a split of authority as to whether the enforcer of a
security interest is a "debt collector" under the general
definition of Section 1692a(6) and thereby subject to the
entirety of the FDCPA, or rather, whether an enforcer of a
security interest should be considered a "debt collector" for the
purposes of Section 1692f(6) only, see Derisme v. Hunt Leibert
Jacobson P.C., 880 F. Supp. 2d 311, 323 (D. Conn. 2012); Chomilo
v. Shapiro, Nordmeyer & Zielke, LLP, Civ. No. 06-3103 (RHK/AJB),
2007 WL 2695795, at *3 (D. Minn. 2007) (both acknowledging that a
split of authority exists), Defendants do not contest, for
purposes of this motion, that they are "debt collectors" for
purposes of the FDCPA.[1]

---

[1]  The Eleventh Circuit has recently addressed this issue and reasoned that since "the
statute specifically says that a person in the business of enforcing security interests is a 'debt
collector' for the purposes of § 1692f(6) ... [it] reasonably suggests that such a person is not a
debt collector for purposes of the other sections of the [FDCPA]." Warren v. Countrywide Home
Loans, Inc., 342 F.App'x 458, 460 (11th Cir. 2009); see Montgomery v. Huntington Bank, 346
F.3d 693, 700–01 (6th Cir. 2003) (same).  On the other hand, the Fifth Circuit has concluded that
"a party who satisfies § 1692a(6)'s general definition of a 'debt collector' is a debt collector for
the purposes of the entire FDCPA even when enforcing security interests." Kaltenbach v.
Richards, 464 F.3d 524, 529 (5th Cir. 2006); see Wilson v. Draper & Goldberg, P.L.L.C., 443
F.3d 373, 378 (4th Cir. 2006) (same).  The Second Circuit has not yet addressed this question.

Rather, Defendants' motion largely focuses on the third element--whether it committed some act or omission in violation of the FDCPA.  In Point I, subsection C of their Memorandum of Law, Defendants argue that violations of state procedural rules do not give rise to claims for relief and that, even if they did, a violation of the New York State procedural rule at issue would not give rise to a claim under the FDCPA.  (Defs.' Memo. of Law at 12-13.)  In response, Plaintiffs argue that "a debt collector's failure to adhere to state or local law in collecting [a] debt violates the FDCPA."  Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion ("Plaintiffs' Opposition").  In support of that proposition, Plaintiffs cite to various cases in which, according to Plaintiffs, "[f]ederal courts have held that violations of state law by attorneys in debt collection lawsuits violate §§ 1692e and 1692f of the FDCPA."  (Id. at 10.)

The cases cited by Plaintiffs, however, involve instances in which the state law violation was either itself alleged to violate the FDCPA or to form an integral part of an FDCPA violation.  For example, in the first case cited by Plaintiffs-- Sanz v. Fernandez, 633 F. Supp. 2d 1356 (S.D. Fla. 2009)--two of the defendants violated a Florida law which prohibits non-lawyers from "drafting, preparing, or filing pleadings on behalf of another."  Id. at 1363 (citing Fla. Bar v. We the People Forms & Serv. Ctr. of Sarasota, Inc., 883 So.2d 1280 (Fla. 2004)).

13

Although neither of the defendants was a lawyer, they filed a lawsuit in state court seeking eviction and money damages on behalf of a client landlord and attorney's fees for their services.  The plaintiff in Sanz alleged that these actions violated both Florida law and specific provisions of the FDCPA, including 15 U.S.C. § 1692e(2)(B), which prohibits making false representation of the compensation which may be lawfully received by any collector of a debt;  15 U.S.C. § 1692e(5), which prohibits making a threat to take an action that cannot legally be taken; and 15 U.S.C. § 1692f(1), which prohibits attempting to collect an amount unless such amount is expressly authorized by the agreement creating the debt or permitted by law.  The Sanz Court denied the defendants' motion to dismiss these claims, stating: "Because Plaintiff alleges that the Defendants are nonlawyers who filed the Eviction Complaint seeking attorney's fees ..., and that this action violates [various provisions of the FDCPA] ..., Plaintiff has adequately alleged that 'the defendant has engaged in an act or omission prohibited by the FDCPA.'"  Id. at 1363 (quoting Pescatrice v. Orovitz, P.A., 539 F. Supp. 2d 1375, 1378 (S.D. Fla. 2008) (internal quotation omitted)).

Similarly, in Kirk v. Gobel, 622 F. Supp. 2d 1039 (E.D. Wa. 2009) – the second case cited by Plaintiffs – the defendant was alleged to have violated the FDCPA by seeking to recover

14

attorney's fees to which the defendant was not entitled under
state law.  The defendant's request for attorney's fees was
based, in part, on section 4.84.250 of the Revised Code of
Washington--a provision which permits the "prevailing party" in
certain actions to recover attorney's fees.  However, in order to
be deemed a "prevailing party" for purposes of this statute, the
party's recovery, exclusive of costs, had to exceed "the amount
offered in settlement by the plaintiff, or party seeking relief
..."  Wash. Rev. Code § 4.84.270.  At the time the defendant
sought attorney's fees in a motion for default judgment, the
defendant "was aware that no settlement offer had been made," but
nonetheless claimed "4.84.250 as an alternative basis for
attorneys fees."  Id. at 1046.  The Kirk Court found that this
attempt to collect attorney's fees under an inapplicable theory
was "unfair and misleading under 15 U.S.C. §§ 1692e and 1692f
..."  Id. at 1046.

In the fourth case cited by Plaintiffs--Lamb v. Javitch,
Block & Rathibone, L.L.P., No. 1:04-CV-250, 2005 WL 4137786 (S.D.
Oh. Jan. 24, 2005)--the alleged state law violations were alleged
to have resulted in unfair and deceptive debt collection
practices.  In that case, the defendant, a law firm, moved in
Ohio state court to confirm an arbitration award that it had
obtained against plaintiff.  The defendant did not request a
hearing on the motion, although there was some authority for the

15

proposition that a hearing was statutorily required and although the defendant admitted requesting oral hearings in most of the other arbitration confirmation actions that they had filed. Moreover, while Ohio law clearly provided that such applications were to be brought as a motion, the defendant commenced the action in a bizarre and confusing manner. On these facts, which at least suggested a concerted--and successful--effort to prevent the plaintiff from opposing the arbitration confirmation motion, the district court concluded that the plaintiff had adequately alleged unfair and deceptive debt collection practices.

However, "[n]ot every violation of state or city law amounts to a violation of the FDCPA." Nero v. Law Office of Sam Streeter, P.L.L.C., 655 F. Supp. 2d 200, 209 (E.D.N.Y. 2009); see Okyere v. Palisades Collection, LLC, No. 12 Civ. 1453(GWG), 2013 WL 1173992, at *8 (S.D.N.Y. Mar. 22, 2013) ("the failure to comply with a state law is not an automatic violation of the FDCPA"). For example, courts in this Circuit have held that technical failures to comply with local licensing statutes do not violate the FDCPA. In McDowell v. Vengroff, Williams, & Assocs., Inc., No. 04-CV-1068 (CBA), 2006 WL 1720435, at *3 (E.D.N.Y. Jun. 21, 2006), the court concluded that the failure to provide a license number on a collection notice as was required by local law was not sufficient by itself to state a claim under the FDCPA. The court reached the same result in Richardson v.

16

Allianceone Receivables Mgt., Inc., 03-CV-5519 (DLC), 2004 WL
867732, at *3 (S.D.N.Y. Apr. 23, 2004) ("While [defendant's]
failure to list its License Number may violate a New York City
ordinance, there is no basis to conclude that this minor
deficiency renders the Letter false, deceptive, or misleading
within the meaning of the FDCPA."). Similarly, in Lindbergh v.
Transworld Sys., Inc., 846 F. Supp. 175, 181 (D.Conn. 1994), the
court granted summary judgment in favor of the debt collector,
finding that there was no claim under the FDCPA when the
out-of-state office of an in-state, licensed, legitimate debt
collector sent correspondence to an in-state debtor.  The court
reasoned that holding otherwise would "reflect[] a false, narrow,
and overly mechanical reading of the FDCPA."  Id.

    Even debt collection practices in violation of state law are
not per se violations of the FDCPA.  See Wade v. Regional Credit
Ass'n, 87 F.3d 1098, 1100 (9th Cir. 1996).  For example, in Wade,
the plaintiff alleged that the defendant, a California collection
agency, engaged in collection activity in Idaho without obtaining
the permit required by Idaho state law.  While acknowledging that
the defendant may have violated state law, the Wade Court
identified the relevant issue as "not whether [the defendant]
violated the state statute, but whether it violated the [FDCPA]."
Id.  The Court expressly rejected the plaintiff's contention that
the defendant's unlicensed collection actions violated the FDCPA

17

because the defendant "deprived the plaintiff of her right as a consumer debtor residing within the state to have the defendant's qualifications as a collection agency reviewed by state authorities." Id. (quoting Gaetano, 774 F.Supp. at 1415, n.8). The Court stated, "[i]f Wade was deprived of such a right, her remedy lies in Idaho state law, not in Section 1692f of the FDCPA." Id. at 1100-01.

In this case, as in Wade, the defendants' debt collection practices did not violate the provisions of the FDCPA. Defendants allegedly violated 22 NYCRR § 202.12-a, a procedural rule promulgated by the Chief Administrator of the New York Courts to facilitate implementation of CPLR 3408. However, CPLR 3408 is not a state analog of the FDCPA. That statute does not prohibit unfair, misleading or deceptive collection practices, but merely furthers a state interest in forestalling or preventing foreclosures. Although defendants may be debt collectors, and their alleged violation of Section 202.12-a may be characterized as unfair, defendants' violation of this state procedural provision neither resulted in, nor contributed to, the sort of unfair debt collection practices prohibited by the FDCPA. Accordingly, this Court finds that Plaintiffs' Amended Complaint fails to state a cause of action under the FDCPA.

18

**Comity and Abstention**

Since this Court concludes that Plaintiffs' Amended
Complaint fails to state a claim under the FDCPA, there is no
need to address Defendants' remaining arguments under Point I.
There is also no need to address Point II of Defendants'
Memorandum of Law, which raises considerations of comity and
various abstention doctrines.  Nonetheless, this Court will
address Defendants' comity and abstentions arguments briefly.

Preliminarily, this Court doubts that abstention would be
appropriate in this case under either R.R. Comm'n of Tex. v.
Pullman Co., 312 U.S. 496 (1941), or Colorado River Water
Conservation Dist. v. U.S., 424 U.S. 800 (1976). First, while
"Pullman abstention may be appropriate where a claim implicates
an unresolved or unclear issue of state law," Handberry v.
Thompson, 436 F.3d 52, 73 (2d Cir. 2006), this Court is not
convinced that the relevant provisions of 22 NYCRR § 202.12-a are
so unclear as to warrant abstention.  Second, Defendants' brief
does not adequately establish the sort of "extraordinary
circumstances" that would justify abstention under the six-factor
test established in Colorado River.  See Niagara Mohawk Power
Corp. v. Hudson River-Black River Regulating Dist., 673 F.3d 84
(2d Cir. 2012).

On the other hand, this Court agrees with Defendants that
principles of federalism and comity militate against construing

19

the FDCPA so broadly as to encompass violations of 22 NYCRR §
202.12-a and/or CPLR § 3408. "The comity doctrine counsels lower
federal courts to resist engagement in certain cases falling
within their jurisdiction," Levin v. Commerce Energy, Inc., 560
U.S. 413, ___, 130 S.Ct. 2323, 2330 (2010), so as to accord
"proper respect for state functions." Id. (quoting Fair
Assessment in Real Estate Ass'n, Inc. v. McNary, 454 U.S. 100,
112 (1981)). The Supreme Court has repeatedly cautioned that
"[s]tatutes conferring federal jurisdiction ... should be read
with sensitivity to 'federal-state relations' and 'wise judicial
administration.'" Levin, 130 S.Ct. at 2331 (quoting Quackenbush
v. Allstate Ins. Co., 517 U.S. 706, 716 (1996)). Similarly, the
Second Circuit has recognized that "'principles of federalism and
comity' instruct us to leave unresolved questions of state law to
the states 'where those questions concern the state's interest in
the administration of its government." Southern New England Tel.
Co. v. Comcast Phone of Conn., Inc., ___ F.3d ___, 2013 WL 1810837,
at *6 (2d Cir. May 1, 2013) (quoting Valencia v. Lee, 316 F.3d
299, 306 (2d Cir. 2003)).

If this Court were to hold that violations of 22 NYCRR §
202.12-a and/or N.Y. CPLR § 3408 are actionable under FDCPA, this
Court would be unnecessarily involving itself in procedural
questions arising in an on-going State court case. Morever, this
Court would effectively be filling a void in state law by

20

establishing a remedy for the violation of these state-law
provisions.  As the Second Department noted in its recent
decision in Wells Fargo (discussed at pp. 3-4, ante), neither the
Legislature nor the Chief Administrator of the Courts has
provided "specific guidance ... as to the appropriate sanctions
or remedies to be employed where a party is found to have
violated its obligation to negotiate in good faith pursuant to
CPLR 3408(f)."  Wells Fargo, 966 N.Y.S.2d at 116.  Accordingly,
the state's trial courts have "resorted to a variety of
alternatives in an effort to enforce the statutory mandate to
negotiate in good faith," including barring the non-compliant
party from collecting interest, legal fees, and expenses;
imposing exemplary damages against them; staying the foreclosure
proceedings and dismissing the foreclosure action.

     While the Second Department held that the sanction imposed
by the trial court in Wells Fargo--namely, the imposition of the
terms of an unexecuted agreement proposed by the plaintiff and
accepted by the defendants--was "unauthorized and inappropriate,"
Id. at 116, that Court declined to endorse any specific sanction
or remedy.  Rather, the Second Department stated:

> In the absence of a specifically authorized sanction or
> remedy in the statutory scheme, the courts must employ
> appropriate, permissible, and authorized remedies, tailored
> to the circumstances of each given case. What may prove
> appropriate recourse in one case may be inappropriate or
> unauthorized under the circumstances presented in another.
> Accordingly, in the absence of further guidance from the
> Legislature or the Chief Administrator of the Courts, the

        courts must prudently and carefully select among available
        and authorized remedies, tailoring their application to the
        circumstances of the case.

Id. at 118. This standard affords considerable discretion to the
trial court, which might be usurped if the option of monetary
damages under the FDCPA were available.

**Plaintiff's Claims under New York General Business Law § 349**

Plaintiffs' Amended Complaint alleges only one cause of
action aside from the causes of action pursuant the FDCPA. The
third cause of action advances a state-law claim, alleging that
Defendants engaged in a "deceptive act or practice" in violation
of NYGBL § 349. (Am. Compl. ¶¶ 132-42.) Title 28 U.S.C. §
1367(c)(3) "permits a district court in its discretion, to
decline to exercise supplemental jurisdiction over state law
claims if it has dismissed all federal claims." Tops Mkts., Inc.
v. Quality Mkts., Inc., 142 F.3d 90, 103 (2d Cir. 1998). "The
exercise of supplemental jurisdiction is within the sound
discretion of the district court." Lundy v. Catholic Health Sys.
of Long Island Inc., 711 F.3d 106, 117 (2d Cir. 2013). In
exercising that discretion, "[t]he court must 'consider and weigh
in each case, and at every stage of the litigation, the values of
judicial economy, convenience, fairness, and comity in order to
decide whether to exercise jurisdiction' over the pendent claim."
Raucci v. Town of Rotterdam, 902 F.2d 1050, 1055 (2d Cir. 1990)

22

(quoting <u>Carnegie-Mellon University v. Cohill</u>, 484 U.S. 343, 350 (1988)).  "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors ... will point toward declining to exercise jurisdiction over the remaining state-law claims."  <u>Cohill</u>, 484 U.S. at 350 n.7.

Considering the facts of this case, this Court declines, in the exercise of its discretion, to exercise supplemental jurisdiction in this case.  All federal claims have been dismissed and no trial has yet been scheduled.  Accordingly, this cause of action is dismissed without prejudice to pursuing the NYGBL § 349 claim in state court.

IV. Conclusion

For the reasons stated above, Defendants' motion to dismiss Plaintiffs' amended complaint is granted. The Clerk of Court is directed to enter judgment in accordance with this Memorandum and Order and to close this case.

**SO ORDERED.**


                                        /s/(SLT)

                                   ⟋SANDRA L. TOWNES
                                    United States District Judge

Dated:    July **10**, 2013
          Brooklyn, New York


24